This is a contract action based on an alleged "oral listing" agreement to sell real estate. On several occasions, and over a period of years, Defendant had listed property with Plaintiff under an oral agreement giving Plaintiff permission to list, show, and sell property from which Defendant would receive a "net" amount and Plaintiff would receive a commission. Up to the time of this transaction, Plaintiff had sold a total of 67.5 acres for Defendant and had obtained the net amount required by Defendant on each sale.
The property which is the basis of this action is a 2,600-acre tract of timberland near Tuskegee, Alabama, known as the Huddleston-Wadsworth tract. During a trip to see another piece of land, Defendant pointed out the Huddleston-Wadsworth property to Plaintiff. The parties' versions of the events following Plaintiff's introduction to the Huddleston property are completely contradictory. Plaintiff maintains that Defendant informed her that, even though the property was tied up in an option, he would give her an oral, nonexclusive listing on the property with an asking price of $600 per acre and a "bottom" sales price of $550 per acre; and, although Defendant wanted a net of $550 per acre, there was no agreement of nonpayment of commission if the property sold for $550 per acre. A Georgia real estate salesman, with whom Plaintiff had a subagency agreement, obtained Georgia-Pacific as a prospect for the Huddleston Property.
Plaintiff maintains that 1) Defendant specifically authorized her to show the Huddleston property at the expiration of the option; 2) she supplied Georgia-Pacific with maps and other information relating to the property supplied to her by Defendant; 3) Defendant told her to go ahead with the sale to Georgia-Pacific; and 4) although it *Page 7 
was mutually agreeable that Georgia-Pacific concluded its negotiations through a third party, Defendant continued to agree to pay Plaintiff a 5% commission if the land sold to Georgia-Pacific.
Subsequent to these negotiations, but prior to the final sale, Defendant withdrew all authority from Plaintiff to list any of his property or to "show, sell or take any action in connection with any of his land." Plaintiff responded with a letter reminding Defendant that she and her sub-agent had procured Georgia-Pacific as a prospective buyer and that, if the property ultimately sold to Georgia-Pacific, Defendant owed them the 5% commission on the sale. After the sale, Plaintiff instituted this action against Defendant.
The jury returned a verdict for the Plaintiff and judgment was entered. Defendant's motion for a new trial was granted. A second jury trial and verdict for Plaintiff resulted in the verdict's being set aside on Defendant's motion for a new trial because of improper jury argument. A third trial resulted in a jury verdict for the Plaintiff and judgment was entered thereon. Defendant's motion for a new trial or J.N.O.V. was denied. Defendant appeals.
Appellant states the "Issues Presented for Review" as follows:
"I. Was the verdict of the jury in favor of Mildred Jones against J.W. Casey against the weight and preponderance of the evidence?
"II. Did the trial Court err in Denying Defendant's motion for directed verdict, motion for new trial, and motion for judgment notwithstanding the verdict following the third trial of this matter?
"III. Did the Court err in failing to grant Defendant's motion for judgment notwithstanding the verdict or for new trial for the reason that there was not sufficient credible
evidence to support the jury's verdict?"
This appeal challenges the propriety of the trial court's orders denying the Defendant's respective motions for a directed verdict and a J.N.O.V., or, alternatively, for a new trial. The only issues, then, are 1) sufficiency of the evidence, and 2) weight of the evidence. We affirm.
We premise our analysis of the issues on certain familiar, and generally well understood, rules of judicial and appellate review. The standard of judicial review for testing a motion for directed verdict is identical to that for testing a motion for J.N.O.V. Evidence sufficient to take the case to a jury as against a motion for directed verdict is likewise sufficient to withstand a motion for J.N.O.V.[1] Citing 5A Moore's Federal Practice ¶ 50.07[2], this Court in Hanson v. Couch,360 So.2d 942, 944 (Ala. 1978), stated:
 "A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence in the same way as does the motion for directed verdict at the close of all the evidence. Ala.R.Civ.P. 50, Committee Comments. Granting the motion for judgment notwithstanding the verdict says, without weighing the credibility of the evidence, there can be but one reasonable conclusion from the evidence as to the proper judgment."
A clear statement of the test is found in Herston v.Whitesell, 374 So.2d 267, 270 (Ala. 1979):
 "[U]nder our system, the jury must be allowed to pass on the evidence if any, no matter how slight, is offered which, if believed, would support a verdict in favor of the party against whom a directed verdict is sought."
In the instant case, not only did the jury find the factual issues in favor of the Plaintiff, but the jury in each of two prior trials had arrived at the same verdict. The first verdict was set aside and a new trial ordered on the weight of the evidence ground. The second verdict was set aside on an *Page 8 
improper argument of counsel ground, and the third jury verdict withstood Defendant's post-judgment motions.[2]
While a post-judgment motion for a new trial invokes a different standard from that standard applicable to a motion for a directed verdict, or post-judgment motion for J.N.O.V., the overruling of a motion for a new trial, just as where successive juries reach the same verdict, strengthens the presumption of correctness of such a jury verdict.[3] Long v.Bankers Life and Casualty Company, 294 Ala. 67, 311 So.2d 328
(1975).
For the sake of clarity, we restate the familiar: Other than objections to admissibility, evidentiary challenges are divided into two separate and distinct categories: 1) sufficiency of the evidence, raised by motions for directed verdict and for J.N.O.V. and measured by the objective "scintilla" rule; and 2) weight and preponderance of the evidence, raised by motion for a new trial and measured by the more subjective "palpably wrong, manifestly unjust" standard.
A post-judgment motion for J.N.O.V. must be predicated upon alleged error of the trial court in failing to grant a pre-judgment motion for directed verdict, the test of each challenge being the same. A post-judgment motion for a new trial, grounded on a claim that "the verdict is against the great weight and preponderance of the evidence," should be granted only in extreme cases, when to let the verdict stand, though supported by some evidence, would be palpably wrong and manifestly unjust.
After a careful review of the record in this case, we are convinced that the evidence of record amply supports the judgment appealed from; and we are unwilling to say that the judgment appealed from is clearly wrong and manifestly unjust.
AFFIRMED.
MADDOX, SHORES, EMBRY and BEATTY, JJ., concur.
[1] This is not to say a trial judge should not exercise his discretion to overrule a directed verdict motion and then re-examine the sufficiency of the evidence issue on a post-trial J.N.O.V. motion. Experience tends to support the wisdom of such a practice, particularly in a close case.
[2] Except that the motion for a new trial following the second jury verdict was based upon a ground other than sufficiency of the evidence, the third jury verdict would have invoked Code 1975, § 6-8-104, which provides: "No more than two new trials can be granted the same party in any cause of action." For a case interpreting and applying this Code section, see LibertyNational Life Insurance Company v. Trammell, 37 Ala. App. 204,67 So.2d 41, cert. denied 259 Ala. 508, 67 So.2d 45 (1953).
[3] For a good discussion of the varying standards for testing a motion for a new trial on the one hand and a motion for J.N.O.V. on the other, see Chavers v. National Security Fireand Casualty Company, Inc., 405 So.2d 1 (Ala. 1981). See, also,Garmon v. King Coal Co., Inc., 409 So.2d 776 (Ala. 1981).