454 So.2d 520 (1984)
Ann K. WRIGHT
v.
Reedus D. FOUNTAIN.
Reedus D. FOUNTAIN
v.
Ann K. WRIGHT.
82-777, 82-778.
Supreme Court of Alabama.
May 25, 1984.
As Modified on Rehearing July 13, 1984.
*522 C. Delaine Mountain and Herbert M. Newell III, Tuscaloosa, for appellant/cross-appellee.
William J. Donald III of Zeanah, Donald & Hust, Tuscaloosa, for appellee/cross-appellant.
JONES, Justice.
The appeal by Defendant/Counterclaim Plaintiff (Wright) challenges the trial court's order granting the motion of Plaintiff/Counterclaim Defendant (Fountain) for a new trial. The cross-appeal by Plaintiff/Counterclaim Defendant asserts as error the trial court's denial of his motion to enforce a settlement agreement. We affirm as to both the appeal and the cross appeal.
This civil action was filed by Plaintiff/Appellee Reedus D. Fountain against Defendant/Appellant Ann K. Wright, alleging that Fountain was the owner of an independent insurance agency; that he employed Wright as an office manager and bookkeeper for the agency; and that during her employment she committed various acts of misfeasance in the operation of his business. He also sought equitable relief, including the return of insurance business records in Wright's possession and an accounting of all receipts and disbursements handled by her in the course of her employment as office manager and bookkeeper, in addition to damages due to her alleged negligence and/or intentional acts.
Wright's initial answer denied the material allegations of the complaint, and requested trial by jury. She then filed a two-count counterclaim against Fountain, seeking damages for alleged defamation, and for monies had and received. She later amended her counterclaim by adding Count III (the only claim that ultimately went to the jury), alleging breach of a constructive or quasi-contract, and claiming damages of $125,000. Before trial, Wright amended her original answer, asserting that she was given authority by Fountain to do any and all acts required in the conduct of his business and financial affairs.
After the case was set for trial, but before the actual trial began, Fountain filed a motion to enforce an alleged settlement agreement. After a hearing, the trial court denied the motion.
Shortly before trial, Fountain answered Wright's counterclaim, denying its material allegations and contending, alternatively, that Wright never made any "loans" to his insurance business; that, if money was loaned, she took more from the business than she loaned back; that any such loans were made without Fountain's knowledge or his consent; that the loans, if made, were made by Wright under a scheme to take money from his business or to replace funds taken through Wright's intentional, wanton, or negligent acts. Further, Fountain amended his original complaint by adding Counts II and III. Count II alleged that Wright breached her employment *523 agreement by negligently, wantonly, or intentionally failing to perform her duties as office manager. Count III reaffirmed Plaintiff's initial allegations against Mrs. Wright, and added an additional prayer for damages of $200,000.
Following a jury verdict for Wright on her counterclaim in the amount of $65,000, Fountain timely filed a motion for judgment notwithstanding the verdict, or, in the alternative, a new trial. He alleged that the jury's verdict was against the great weight of the evidence; that the verdict was against the law as contained in his requested jury charges; and that the verdict was a result of prejudice generated by Wright's testimony concerning Plaintiff's alleged sexual misconduct towards Defendant.
The trial court denied Fountain's motion for judgment notwithstanding the verdict, but granted his motion for a new trial. This appeal and cross-appeal ensued.

FACTS
Reedus D. Fountain owns the Fountain Insurance Agency in Gordo, Alabama, where he has been in business for over 22 years. The company is licensed to write multi-line insurance, including fire, automobile, liability, workmen's compensation, life, accident, and health insurance. In addition to his insurance business, Mr. Fountain raises cattle on his farm in Pickens County.
In January 1972, Fountain hired Ann K. Wright, a resident of Gordo, as secretary and office manager for his insurance business. Her duties included taking applications for insurance and calculating premiums, customer billing, payment of Mr. Fountain's business, farm, and personal debts, and assistance in the preparation of Fountain's income tax returns, as well as other general responsibilities.
Fountain maintained three separate checking accountsone for the insurance business, one for the farm, and another personal account. Wright was explicitly authorized to write checks on the business and personal accounts, but not the farm account. After a period of time, however, she began signing checks on the farm account as well.
Fountain's different bank accounts were from time to time overdrawn. According to Wright, she began borrowing money in 1974 from individuals and banks in her own name and placing the money in Fountain's accounts. Additionally, Wright placed some of her own personal savings in these accounts, as well as funds from the sale of real estate belonging to her and her husband.
According to Fountain, Wright obtained a loan from the Bank of Reform, Alabama, in December 1979, by forging his and his wife's signatures to loan documents and putting up property owned by him and his wife as collateral. The loan amounted to $14,000.
Wright testified that her personal financial contributions to Fountain's three accounts totalled over $79,000. She further testified that the reasons behind her contributions included: 1) Promises by Fountain that she would someday own the insurance business; 2) sexual intimidation; and 3) coercion. All of this testimony was denied by Fountain. On June 22, 1981, Mrs. Wright terminated her employment with Reedus Fountain's insurance agency, and this litigation ensued.

THE APPEAL
We note at the outset that Counterclaim Defendant's (i.e., Plaintiff's) post-judgment motion limited its attack to the verdict and judgment in favor of the Counterclaim Plaintiff (i.e., Defendant). Accordingly, the trial court's order granting a new trial in this cause is limited to the counterclaim and does not carry with it a retrial of the original claim asserted by Fountain against Wright; therefore, our review will be so limited.
The trial judge found sufficient evidence to defeat the Plaintiff's motion for a directed verdict as well as his subsequent motion for judgment notwithstanding the verdict, the test for the two being the *524 same. Casey v. Jones, 410 So.2d 5 (Ala. 1981). He granted a new trial, however, as to the judgment for Defendant on her counterclaim on the express ground that the verdict was against the great weight of the evidence. Pepsi-Cola Bottling Company of Dothan, Alabama, Inc. v. Colonial Sugars, 423 So.2d 190 (Ala.1982).
Fountain's motion for JNOV called upon the trial court to review its earlier ruling on Fountain's motion for directed verdict, because both motions test the sufficiency of the evidence. The trial court exercises no discretionary prerogative in making this determination. The judge must determine whether the Counterclaim Plaintiff (i.e., Defendant) met her burden with respect to the sufficiency of the evidence to take the case (her counterclaim) to the jury. Casey, supra. In relative terms, this test is an objective one. Either the Counterclaim Plaintiff met her burden of proof and the directed verdict motion was properly overruled; or her case failed for lack of proof and the moving party (i.e., Plaintiff) was entitled to have his directed verdict motion granted.
Our review of the evidence convinces us that the trial judge correctly overruled the motions for directed verdict and JNOV. We find, as did the trial judge, that Counterclaim Plaintiff (i.e., Defendant) met her burden of proof by her testimony with respect to the monies which she claims to have expended from her own funds to pay for the operating expenses and liabilities of Fountain's insurance business. There was at least an inference of fact from the total circumstances of these transactions that Fountain knew and approved of these "loans."
Admittedly, the test for a new trial is different and more subjective in nature than the standard for directed verdict and JNOV motions. Bekins Van Lines v. Beal, 418 So.2d 81 (Ala.1982). In case of the latter, no verdict can be sustained without supporting evidence; and rulings of the trial court with respect thereto do not reach the appellate court with any presumption of correctness. Perdue v. Mitchell, 373 So.2d 650 (Ala.1979); Chavers v. National Security Fire & Casualty Co., 405 So.2d 1 (Ala.1981). While the exercise of discretionary functions by the trial court are normally favored with a presumption of correctness on appellate review, that presumption is tempered by an equally strong presumption favoring the sanctity of a jury verdict which has already withstood the sufficiency of the evidence test. Pepsi-Cola, supra.
Where the verdict is plainly and palpably supported by the evidence, even as against a preponderance of the evidence, the trial judge should exercise his discretion in favor of the jury verdict's validity. Rowell v. McCollough, 270 Ala. 576, 120 So.2d 729 (1960). Our case law makes it clear that the "against the great weight of the evidence" ground should be the most carefully scrutinized and rigidly limited ground for a new trial; and a new trial should be granted only in extreme cases, when to let the verdict stand would sanction a palpably wrong and manifestly unjust result. Cooper v. Peturis, 384 So.2d 1087 (Ala.1980).
With the admonition of this test firmly in mind, and with a full understanding and appreciation of Appellant Wright's earnest contentions to the contrary, we conclude from a thorough review of the record that the trial court did not err in ordering a new trial as to her counterclaim.
Appellant's argument is highly persuasive. In an excellent brief, she leads us step-by-step through a voluminous record, pointing to the evidentiary basis for her counterclaim: 1) The undisputed testimony indicates that Wright placed a substantial amount of her personal funds into Fountain's bank accounts, and that Fountain received a benefit therefrom; 2) during direct testimony of Wright when questioned by her own attorney, her funds are traced into Fountain's business by means of checks, deposit slips, and bank statements; 3) the record is devoid of any evidence which would dispute the fact that she *525 placed these funds into Fountain's accounts; and 4) Fountain's own attorney described the "issue" as balancing the amount she had put in with how much she had repaid herself from the business.
This is countered by Appellee Fountain, who would uphold the granting of a new trial, thusly: 1) In December of 1979, Wright obtained a loan from the Bank of Reform in Fountain's name for $14,000 by forging his signature and his wife's signature on the loan documents and putting up Mr. and Mrs. Fountain's property as collateral; 2) Fountain never authorized Wright to put her money into his bank accounts, or to borrow money, whether in her name or his, in order to keep the insurance agency going or to help pay his expenses; 3) none of Fountain's previous office managers had ever loaned money to the insurance business to keep it going; and 4) Fountain had no actual notice that Wright was borrowing money in her name or his, transferring these monies into Fountain's accounts, or "loaning" money to his business.
While the issue is a close one, and while we would not have disturbed the trial judge's denial of a new trial, we feel that the trial judge's conclusion that the verdict is so against the great weight of the evidence as to be palpably wrong and manifestly unjust should not be disturbed. The trial judge's presence at the trial places him in a superior position to judicially review the relative credibility of the witnesses. Particularly is this true where, as here, it is apparent from the record that this trial took place in a highly tense atmosphere arising out of the past relationship of the parties. These considerations cause us to defer to the subjective judgment of the trial court in its post-trial review of the verdict.

THE CROSS-APPEAL
According to Fountain, "Prior to the trial the parties entered into an oral settlement agreement...." He says: "After the agreement was reached, Mrs. Wright experienced `settlor's remorse' and desired to be no longer bound. The Trial Court denied Mr. Fountain's motion to enforce the settlement agreement."
Rule 47, A.R.A.P., reads as follows:

"AGREEMENTS IN WRITING
"No private agreement or consent between the parties or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing, and signed by the party to be bound thereby; provided, however, agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written."
See, also, Code 1975, § 34-3-21, and Anonymous v. Anonymous, 353 So.2d 515 (Ala. 1977).
While Plaintiff sought to set forth in writing the terms of the parties' alleged settlement agreement, we are not persuaded that the parties' negotiations produced a document reduced to writing and agreed upon by both parties. Contrary to the factual basis for this Court's holding in Brocato v. Brocato, 332 So.2d 722 (Ala. 1976), the instant record does not disclose that this "oral agreement" was made in open court or at a pretrial conference. The record does disclose that the trial judge made his decision to deny enforcement of the alleged agreement subsequent to a hearing and argument by both parties.
Because the trial judge was fully aware of, and played an integral role in, the parties' settlement negotiations, and because we find evidence to support his findings, we uphold his order rejecting enforcement of the settlement agreement.
AFFIRMED AS TO THE APPEAL.
AFFIRMED AS TO THE CROSS-APPEAL.
TORBERT, C.J., and MADDOX, SHORES, and BEATTY, JJ. concur.

ON APPLICATION FOR REHEARING
JONES, Justice.
The Plaintiff/Counterclaim Defendant (Fountain) applies for rehearing and requests *526 that the new trial in this cause include the issues involved in his complaint against Wright. Viewing the record in its totality, and considering that neither party raised this issue, the Court is persuaded by Fountain's arguments. The opinion of May 25, 1984, is hereby modified to specifically adjudge that the new trial in this cause shall include all the claims and issues litigated in the original trial.
Three issues must be decided in Fountain's favor in order to grant the relief requested by his application for rehearing. The first problem concerns the three verdict forms provided to the jury. Although there was no verdict form resolving the Plaintiff's original claim in favor of the Defendant, it is apparent that the court and both parties understood that Fountain's direct claim was subsumed in the verdict form resolving Wright's counterclaim in her favor. We decide, therefore, that the verdict form returned by the jury, which awarded Wright $65,000 on her counterclaim, also denied Fountain's direct claims. The judgment on the verdict was, therefore, a final judgment.
The second issue involves the intent and effect of Fountain's post-trial motion. The alternative motion for new trial was included in the same document with the motion for JNOV and did not specifically state any grounds for the motion for new trial. We interpret the motion for new trial to have included the three grounds asserted in Fountain's motion for JNOV. The trial judge's order granted the motion for new trial on the ground that the verdict was against the great weight of the evidence. This we affirm.
Third, we decide that the request for a complete new trial was properly before the trial judge. Therefore, because his order granting the motion for new trial does not limit the new trial to particular claims or issues, we construe the order as granting a complete new trial as to all the claims and issues.
The issue on rehearing is whether the new trial will be a complete new trial on all the claims and issues or a new trial only as to Wright's counterclaim. The new trial is to be a complete new trial because: 1) the jury verdict, and the judgment thereon, denied Fountain's direct claims; 2) Fountain's motion for new trial was directed to the whole verdict and judgment; and 3) the trial judge's order granting Fountain's motion for new trial was intended to grant a complete new trial on both the complaint and the counterclaim.
REHEARING GRANTED; OPINION MODIFIED AND EXTENDED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.