Plaintiff Richard Wooten,[1] while riding a motorcycle on Cullman County Road 18, collided with a hay rake being pulled by a tractor owned by co-defendant Dewey Hutson and driven by co-defendant James Cordes. *Page 91 
The jury returned a verdict in favor of Wooten for $300,000. Both defendants appeal.
On appeal, they claim that they were entitled to a directed verdict, because:
 (1) There was no showing of negligence because the hay rake was exempt from the width requirements which otherwise apply to motor vehicles; and
 (2) The evidence showed plaintiff Wooten was contributorily negligent as a matter of law.
In addition, defendant Hutson claims he was entitled to a directed verdict because Cordes was not his agent at the time of the accident.
Defendants also say they were entitled to a new trial because the verdict was against the great weight of the evidence.
 I Did plaintiff prove agency?
We believe that the jury was authorized to find that defendant Cordes was Dewey Hutson's agent.
The facts regarding agency were in dispute. Cordes worked as a farmhand for both Dewey and Melvin Hutson. Hutson and Cordes argue that the evidence established that on the day in question Cordes was Melvin Hutson's agent. Wooten, on the other hand, contends that the evidence established that Cordes was moving the tractor and hay rake to Butler Field in order to rake hay for Dewey Hutson. Because the facts were in dispute, we must conclude that the question of agency was properly submitted to the jury.
The law states that a principal is liable for the acts of an agent done in the interest of and in the prosecution of the principal's business, if the agent is acting within the scope of his employment. Regional Agricultural Credit Corporation ofWashington, D.C. v. Hendley, 251 Ala. 261, 37 So.2d 97 (1948);Craft v. Koonce, 237 Ala. 552, 187 So. 730 (1939); SouthernRailway Co. v. Wildman, 119 Ala. 565, 24 So. 764 (1898). To constitute agency, there must be a meeting of the minds of both the principal and the agent as to the scope of employment.Western Union Telegraph Co. v. Northcutt, 158 Ala. 539,48 So. 553 (1908). The rule governing whether the question of agency shall be submitted to the jury is best set forth in Craft,supra, 237 Ala. at 554, 187 So. at 731, as follows:
 "When plaintiff proves such ownership of the [vehicle] by defendant, and thereby brings into being the presumption [that the driver was his agent], he need not offer further proof that the operator of the [vehicle] was the agent of defendant, and in the line and scope of his authority, until and unless defendant has offered proof that he was not acting for defendant in the line and scope of his authority. And if defendant makes that proof and it is not contradicted, either expressly or inferentially, defendant is entitled to [a directed verdict]. But if there is any evidence which reflects upon the credibility of that evidence by defendant on that question, or from which an inference may be drawn to a different result, whether such evidence was produced by defendant or plaintiff, the question of whether the operator of the [vehicle] was defendant's agent acting in the line and scope of his authority should be submitted to the jury."
It is elementary that the test of agency is the right of control, whether exercised or not, and that is a question for the trier of fact if the evidence is in dispute. Hatton v.Chem-Haulers, Inc., 393 So.2d 950 (Ala. 1980).
 II
Did the fact that the hay rake was exempt from the width requirements of the law entitle the defendants to a directed verdict?
We think not. Alabama's Code does exempt "implements of husbandry" from the provisions of law applicable to other vehicles.
Code 1975, § 32-9-22, provides as follows:
 "There shall be exempt from the provisions of this article trucks, semitrailer *Page 92 
trucks or trailers owned by the United States, or any agency thereof, the state of Alabama, or any county or city, or incorporated town; nor shall the provisions of this article apply to implements of husbandry temporarily propelled or moved upon the highways; nor shall the provisions of this article apply to trucks, semitrailer trucks, or trailers used exclusively for carrying 50 bales or less of cotton."
Although "implements of husbandry" are exempt from the width restrictions, it is not a blanket exemption which would apply regardless of the manner in which a motor vehicle was operated on the public highways. The law requires that travelers on public highways, whether in an automobile or on a tractor, use the highway in such a way that they will not injure other travelers. Barber Pure Milk Co. v. Holmes, 264 Ala. 45,84 So.2d 345 (1955).
The evidence tends to show that County Road 18 is approximately eighteen feet wide at the scene of the accident, and that the tractor with the hay rake attached is a total of ten feet wide with three feet of the hay rake protruding from the left side of the tractor. The evidence was conflicting as to how much room was available on the other side of the road for oncoming traffic. Cordes testified that the right wheels of the tractor were along the right edge of the pavement. Other witnesses testified, however, that the vehicle was in the center of the road.
Because of this conflict in the evidence, we cannot agree with the defendants, therefore, that the only evidence of negligence was the width of the hay rake. The jury could have concluded that the defendants were negligent in the manner in which they operated the equipment, even though it was an "exempt" item.
 III
Did the trial court err in refusing to direct a verdict in favor of the defendants on the issue of contributory negligence?
We think not.
Defendants contend in their brief that plaintiff "admitted that he would expect to see [a hay rake] on this road," that "the presence of the hay rake was no surprise," that "he knew it was dangerous to be riding the motorcycle," that "he knew he was coming into a curve," that "he had enough room to get by the hay rake," that "he could have missed this hay rake if he had been travelling slower," and that "[t]wo witnesses testified that plaintiff admitted at the scene that the accident was his fault."
We have examined the specific testimony of the plaintiff to which the defendants refer and we are of the opinion that there was sufficient testimony for the jury to conclude that the plaintiff was not guilty of contributing to his injuries. For example, he testified, in substance, that although he was not surprised to see a farm vehicle on the road, he was obeying all traffic laws and that he slowed down to 30 m.p.h. when he entered the curve, but that there would have been no way to avoid the rake without running off the road.
Plaintiff did make what the jury could have determined was an admission of fault:
 "A: Well, he was hurting real bad and he said, Oh God, I am going to lose my leg. And, he said, I am sorry, it was my fault.
"Q: You heard him say that?
"A: Yes, Ma'am.
"Q: Who was he talking to?
 "A: Well, he was talking to me and Jimmy I reckon, he wasn't looking at either one of us."
In context, this statement could have been taken by the jury to mean that he was blaming himself for getting hurt. One of the defendants' witnesses testified that the essence of the plaintiff's statement made at the scene when he was hurting was: "I shouldn't have been on the motorcycle." The jury apparently did not find that the plaintiff's conduct and statements showed him to be guilty of contributory negligence. *Page 93 
We hold, therefore, that the trial court did not err in refusing to grant a directed verdict or new trial based on the claim of contributory negligence.
 IV
Was the verdict inconsistent and so against the preponderance of the evidence as to be plainly erroneous and manifestly unjust?
We think not.
Defendants correctly cite the applicable rule in their brief:
 "[A] post-judgment motion for a new trial, grounded on a claim that `the verdict is against the great weight and preponderance of the evidence, should be granted only in extreme cases, when to let the verdict stand, though supported by some evidence, would be palpably wrong and manifestly unjust.' Casey v. Jones, 410 So.2d 5, 7-8 (Ala. 1981)."
They claim that this is the kind of case referred to inCasey, contending that the undisputed evidence is that at the time of the accident, Cordes was the agent of Melvin Hutson. They contend that Melvin was the principal in this case and should have been added as a party defendant, and that plaintiff himself recognized this fact and attempted to add Melvin Hutson on August 1, 1983, but the statute of limitations had run at that time, and that the trial court properly denied the addition. They argue:
 "The only evidence of negligence in this case is the fact, disputed, but believed by the jury, that the ten foot hay rake protruded over the center of an eighteen foot wide road. The tractor was on the right side of the road going less than fifteen miles per hour and was properly allowed by statute to pull a ten foot wide hay rake. Plaintiff's testimony that the tractor was on its side of the road but that the hay rake was sticking out four or five feet into his lane leaving only four feet to get by is clearly a physical impossibility. The road in question is undisputedly eighteen feet wide; the hay rake in question protrudes only three feet from the left side of the tractor. The least possible space open for plaintiff would have been six feet. Any reasonably prudent motorcycle driver can maneuver through a six foot opening. Furthermore, plaintiff admitted he knew the motorcycle was a dangerous instrumentality, that he might meet farm vehicles on this road, and that he had room to get by the hay rake. He admitted at the scene that it was his fault and he admitted on the witness stand that he could have missed the hay rake had he been going slower."
As we have pointed out, defendants presented each of these claims to the jury and the jury refused to respond in defendants' favor. The law, however, is well settled in this area.
A jury verdict is presumed to be correct, and that presumption is strengthened where the trial court denies a motion for new trial. Merrill v. Badgett, 385 So.2d 1316
(Ala.Civ.App.), cert. denied, 385 So.2d 1319 (Ala. 1980). "Granting or refusing a motion for new trial rests within the sound discretion of the trial court; the exercise of that discretion carries with it a presumption of correctness which will not be disturbed by this court unless some legal right was abused and the record plainly and palpably shows the trial court was in error." Hill v. Cherry, 379 So.2d 590 (Ala. 1980). We find no abuse of discretion by the trial court in denying a new trial or a judgment notwithstanding the verdict.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] While Richard Wooten's wife Linda was originally a party plaintiff, the lower court's verdict was in favor of Richard Wooten alone. *Page 94