This is an appeal from a summary judgment granted by the Circuit Court of Lamar County in favor of the defendant, Commercial Dispatch Publishing Co., Inc. ("Commercial Dispatch"), and against the plaintiffs, Bryan Brown, a minor, suing by and through his next friend and father, Curtis D. Brown, and Curtis D. and Betty Brown individually. We agree with the plaintiffs that the trial court erred in granting the summary judgment, and therefore reverse the judgment below.
The suit arose out of a one-vehicle accident which occurred at a bridge on Hell's Creek Road near Vernon, Alabama. Twelve-year-old Bryan Brown was riding in an automobile driven by 32-year-old Christian Ott when the automobile skidded out of control and overturned into the water below the bridge. At the time of the accident, Ott was delivering newspapers for Commercial Dispatch and Bryan was riding along as his assistant. Commercial Dispatch is the publisher of TheCommercial Dispatch, a newspaper which is circulated in Columbus, Mississippi, and surrounding *Page 246 
areas, including parts of west Alabama. As a result of the accident, Bryan suffered brain damage and has remained in a semi-comatose state.
The plaintiffs filed suit against Ott, Commercial Dispatch, Lamar County, the Lamar County Commission, and the individual members of the county commission. Commercial Dispatch filed a motion for summary judgment on the ground that Ott was an independent contractor and not its agent at the time of the accident. The trial court found that there was no genuine issue as to any material fact with regard to Ott's status as an independent contractor and granted Commercial Dispatch's motion for summary judgment. That judgment was made final pursuant to Rule 54(b), Ala.R.Civ.P. Plaintiffs subsequently appealed.
The sole issue presented for our review is whether the trial court erred when it granted Commercial Dispatch's motion for summary judgment. If Ott was an independent contractor of Commercial Dispatch as a matter of law, it did not. If a question of fact exists as to whether Ott was an agent, servant, or employee of Commercial Dispatch, it did. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. The burden is on the moving party, Commercial Dispatch, to clearly show that there is no genuine issue of material fact. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against Commercial Dispatch. The burden is further increased by the scintilla ("any evidence") rule, which requires that a summary judgment not be granted if there is any evidence supporting the position of the nonmovant. Silk v.Merrill Lynch, Pierce, Fenner Smith, 437 So.2d 112 (Ala. 1983). Thus, Commercial Dispatch has the burden of proving that there is no evidence which supports the plaintiffs' claim.
Whether one is the agent of another is ordinarily a question of fact to be decided by the jury. Daugherty v. M-Earth ofAlabama, Inc., 485 So.2d 1145 (Ala. 1986). As was stated inCordes v. Wooten, 476 So.2d 89 (Ala. 1985): "It is elementary that the test of agency is the right of control, whether exercised or not, and that is a question for the trier of fact if the evidence is in dispute." For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Solmica of the Gulf Coast, Inc. v.Braggs, 285 Ala. 396, 232 So.2d 638 (1970). An agency relationship is not created when the employer merely retains the right to supervise or inspect the work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications and retains the right to stop work that is not properly done.Weeks v. Alabama Elec. Co-op, Inc., 419 So.2d 1381 (Ala. 1982).
The evidence shows the following:
Ott was a newspaper carrier for Commercial Dispatch at the time of the accident. His job was to deliver newspapers to all of the subscribers along his route who had requested home delivery service. While he was free to pursue other work or employment, Ott agreed not to distribute another publication or printed advertisement with The Commercial Dispatch without obtaining the written consent of Commercial Dispatch.
Ott's geographic delivery area was determined by Commercial Dispatch. New subscribers were added by start-orders from Commercial Dispatch and cancellations were made by stop-orders from Commercial Dispatch. Commercial Dispatch owned the subscriber list and retained the right of access to it. Although Ott was not required to solicit new subscribers, he was given a $5.00 commission for each new subscription which he secured, whether on his route or another. Ott was not allowed to deliver papers outside the geographic route assigned to him by Commercial Dispatch.
Commercial Dispatch offered some life and accident insurance to its carriers, including *Page 247 
Ott, on an optional basis at the carrier's expense.
When Ott was hired he was given a cassette tape prepared by his district manager, Patricia Shackleford, whose job was to supervise the distribution of the newspaper in her assigned district. Including Ott, there were 40 carriers operating within her district. The cassette tape given to Ott contained detailed instructions on placing newspapers either in "tubes," mailboxes, or driveways in accordance with the particular preference of certain customers. Ms. Shackleford testified by deposition that the tape was merely an introduction tape designed to familiarize Ott with his new route and that he was not required to follow the directions.
Commercial Dispatch utilized a system through its central office to relay messages to carriers on a daily basis. Start and stop orders were placed in a bundle of papers for the carrier. If complaints of missed papers were received through the central office, office personnel would attempt to contact the carrier by phone. If the carrier could not be reached, the district manager was available to make the delivery. Carriers were responsible for securing their own backups on days when they were unable to make deliveries. When the central office received complaints for reasons other than missed papers, a written message to the carrier was included in a bundle of papers the following day.
Ott was not furnished an automobile; however, Commercial Dispatch did help defray the automobile expenses which he incurred in delivering the papers. Ott was not instructed on the sequence in which deliveries were to be made along his route, nor was he told to hire an assistant. Bryan was hired and paid by Ott.
Ms. Shackleford checked daily to confirm that Ott had picked his newspapers up at the "drop point" designated by Commercial Dispatch. Ott was required to pick up papers on weekdays at 1:00 p.m. and on Sunday at 1:00 a.m. and to deliver them within a "reasonably short period of time." Ms. Shackleford testified by deposition that deliveries made after dark on weekdays would be considered unreasonable except during the winter months when daylight hours are limited. Ms. Shackleford also testified that any deliveries made after 7:00 p.m. would be considered unreasonable. Commercial Dispatch retained the right to terminate Ott's employment, without notice, upon his failure to deliver the papers within a "reasonably short period of time."
Commercial Dispatch did not maintain Ott on any payroll. No taxes were withheld and he was not provided insurance under the program established for the employees of Commercial Dispatch.
Commercial Dispatch sold its newspapers to Ott at a wholesale rate and also set the retail rate to be charged to subscribers. Ott was responsible for collecting from the subscribers along his route, although he was not told how to do that by Commercial Dispatch. Using his own personal stationery and envelopes, he billed subscribers on a monthly basis at the retail subscription rate set by Commercial Dispatch. Subscribers paid Ott directly (except those who had prepaid directly to Commercial Dispatch), and Ott deposited the money into his personal bank account. Ott had authority from Commercial Dispatch to endorse and deposit or cash any checks made out to Commercial Dispatch. Ott then paid Commercial Dispatch for the papers sold to him, at the wholesale rate set by Commercial Dispatch. The difference between the two rates determined Ott's profit. Ott was required to post a cash bond to secure the payment of any amount owed to Commercial Dispatch.
Finally, it was expressly agreed between Commercial Dispatch and Ott that Ott was not an employee of Commercial Dispatch, but, rather, an independent contractor or distributor who had the right to employ any means he chose in the distribution of the newspapers.
Initially we should note that agency is determined by the evidence as a whole, and not necessarily by how the parties characterize their relationship. National Sec. Fire Cas. Co.v. Bowen, 447 So.2d 133 (Ala. 1983). Viewing the evidence *Page 248 
in this case in the light most favorable to the plaintiffs, as we are required to do when reviewing the action of a trial court in granting a summary judgment to a defendant, we are of the opinion that the plaintiffs did offer enough evidence concerning the question of agency to require that the issue be submitted to a jury. See Daugherty v. M-Earth of Alabama, Inc.,supra. There is clear evidence that Commercial Dispatch retained the right to control Ott with regard to the results
sought to be accomplished (i.e., delivery of newspapers within a reasonably short period of time to all subscribers along the route). However, our cases require more than that. Commercial Dispatch does not dispute the fact that it retained the right to supervise Ott and to terminate his employment for the purpose of controlling the result sought to be accomplished. However, it insists that, as a matter of law, it did not retain any right to control the manner in which the newspapers were to be delivered. We disagree.
This case is conceptually difficult because theresult sought to be accomplished by Commercial Dispatch (i.e., prompt delivery of newspapers to all subscribers along the route) and the manner in which that result was sought to be accomplished (i.e., prompt delivery of newspapers to all subscribers along the route) are one and the same thing. In other words, if Ott delivered the newspapers to the subscribers along his route within a reasonably short period of time, then he accomplished the result sought by Commercial Dispatch. There is evidence which tends to show that Commercial Dispatch, through its central office and Ms. Shackleford, its district manager, supervised Ott not just for the purpose of insuring the delivery of newspapers, but the delivery of newspapers within a reasonably short period of time. Ott's employment was subject to termination upon his failure to deliver the papers in such a manner. Furthermore, the cassette tape given to Ott by Ms. Shackleford contained detailed instructions on "how" to deliver the newspapers along the route. While there is substantial evidence tending to show that Ott was acting independently of Commercial Dispatch, there is also evidence tending to show that the manner of Ott's performance was under the constant supervision and control of Commercial Dispatch. Therefore, under Alabama's sufficiency of the evidence rule, this was not a matter to be resolved by summary judgment.
Cases from other jurisdictions involving the carrier-newspaper relationship are divided as to when a jury question exists on the issue of agency; however, those cases are in accord that whether or not there is a jury issue depends on the facts of the particular case. See 55 Annot., A.L.R.3d 1216 (1974).
Commercial Dispatch relies heavily on Birmingham Post Co. v.Sturgeon, 227 Ala. 162, 149 So. 74 (1933), which was a worker's compensation case. That case was not submitted to the trial court on motion for summary judgment or decided by a directed verdict. The court as the trier of fact found in favor of the Birmingham Post. The plaintiff in that case was a newsboy who sold individual papers randomly to people on the streets of Birmingham.
The trial court's judgment is reversed, and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.