Plaintiff, Transport Acceptance Corporation, appeals a $25,000 judgment against it on the counterclaim of defendants Russell Vincent and Randolph Scott based on fraud in the sale of a Kenworth tractor-trailer. We affirm.
Transport Acceptance is in the business of providing financing for tractor-trailer dealers. On May 1, 1981, Vincent and Scott approached J.R. Parris, branch manager of Transport Acceptance in Nashville, Tennessee, about financing the purchase of a tractor-trailer they had found in Chattanooga in anticipation of a trucking partnership they were about to start. Parris told them he would be glad to help them but that before they made a decision they should look at some trucks in Nashville, namely at Big R. Truck Sales ("Big R"), which was about two or three blocks from the office of Transport Acceptance. Parris walked Vincent and Scott down to Big R, where he introduced them to Ray Murphy, its president. The record indicates that Transport Acceptance kept some of its repossessed trucks on Big R's lot. Vincent and Scott explained to Parris and Murphy that they had $3,500 cash for a down payment and needed a dependable truck to start their business. Parris led them around the lot and pointed out different trucks, while Murphy "was back and forth on the phone."
After test driving a truck owned by Transport Acceptance, which had been sitting on Big R's lot, Vincent checked the water and noticed it was very low. Murphy attributed the loss of water to the fact that the truck had been on the lot nearly one year and had been driven 16,000 miles to pick up trucks and equipment and bring them back to the lot. Parris told them that Murphy knew all about the truck and had all the answers to questions regarding it, and then Murphy guaranteed that the truck would hold up for one year. When Vincent and Scott decided to buy the truck, Parris and Murphy told them that they required a 20% down payment, which was more than the $3,500 Vincent and Scott had. Parris and Murphy went to the other end of the office, closed the door, and after conferring a few minutes, agreed to accept the $3,500 (which was closer to 15%). Parris told Vincent and Scott that he would stand behind them financially if they had any major breakdowns and could not afford repairs. Vincent and Scott, as well as Murphy, signed an "as is" installment contract with a stated price of $24,500. With interest and fees, the total price was $29,883.96, which was to be paid in 36 monthly installments of $830.11 each. That same day, May 1, 1981, Transport Acceptance titled the truck to Big R, and Big R then made a without-recourse assignment of its rights under the contract to Transport Acceptance.
On its first trip, the truck lost a great deal of water and "ran hot," and on August 10, 1981, Vincent and Scott called *Page 978 
Transport Acceptance to report the trouble they were having. Vincent repaired the engine repeatedly and finally called Parris for financial help with a $3,800 estimate on engine repairs, which Parris refused. After making four payments on the installment contract, Vincent and Scott defaulted and the truck was repossessed. Transport Acceptance purchased it for $15,500, leaving a deficiency of $10,814.78. Transport Acceptance filed suit on January 18, 1983, for that deficiency. Vincent and Scott filed a counterclaim for breach of warranty and fraud but, at trial, they dismissed the breach of warranty claim and proceeded only on the fraud count. The jury awarded Transport Acceptance $17,881.76 and awarded Vincent and Scott $25,000.
On appeal, Transport Acceptance denies any principal-agent relationship between Parris and Murphy and also denies any misrepresentation by Parris to Vincent and Scott. The existence and scope of a principal-agent relationship is normally a question of fact to be determined by the jury. Shelby v. ZayreCorp., 474 So.2d 1069 (Ala. 1985); National Security Fire Casualty Co. v. Bowen, 447 So.2d 133 (Ala. 1983). That relationship must be either expressed, implied, or apparent.Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297 (Ala. 1986). The trial judge instructed the jury on the meanings of principal, agent, independent contractor, and right of control:
 "Now, in order for the Defendants to recover under their fraud counterclaim, you would have to find that fraudulent representations were knowingly participated in by Parris, who was acting as an agent of the Plaintiff, or that Big R was acting as the agent of Transport Acceptance in making the sale and when the false representations were made, if any were made. The Plaintiff says that no false representation was made by anyone acting as its agent and denies that Big R was ever acting as its agent in this case. The Plaintiff says that Big R was instead acting as an independent contractor. Now, there's no question, I don't believe, under the evidence that Parris was an agent of Transport in this transaction, but Transport strenuously denies that Big R was its agent but if Parris knowingly participated by aid or assistance in the commission of a fraud in this case, then he would be liable and Transport would be liable, the same as the person actually making the statements. . . .
". . .
 ". . . [O]ne of the questions that you will have to answer in this is the question of agency and you need to know what the law means by agency. An agent is a person who, by agreement with another, who is called a principal, acts for the principal and is subject to his control. . . .
 ". . . [A]n independent contractor, ladies and gentlemen, is one who undertakes to do work for another according to his own methods and means, not being subject to the control of the other person, except as to the result to be accomplished. One who engages an independent contractor is not liable to others for the acts or omissions of the contractor. The basic test to be used in determining if a party that is performing a task for another is doing it as the other's agent or is doing it as an independent contractor is that of control. If the person engaging another to perform a task reserves the right to control the method and manner in which the task is performed, then the person performing the task is an agent. . . .
 "Whether or not Big R was agent of Transport Acceptance or was an independent contractor are questions of fact for you to decide based on the evidence in this case and the law as I have just given it to you."
The testimony reveals several facts that support a finding that Murphy was the agent of Transport Acceptance. It appears that Transport Acceptance relied heavily on Murphy and Big R to sell its repossessed tractors, that it did not convey title to Big R until the day of the sale to Vincent and Scott, and that a conference between Parris and Murphy was necessary to decide an acceptable down payment from Vincent and Scott.
"It is elementary that the test of agency is the right ofcontrol, whether exercised *Page 979 or not, and that is a question for the trier of fact if the evidence is in dispute." Daugherty v. M-Earth of Alabama, Inc.,485 So.2d 1145, 1147 (Ala. 1986), quoting Cordes v. Wooten,476 So.2d 89, 91 (Ala. 1985). "[I]t is not essential that the right of control be exercised so long as that right actually exists. . . . [A]gency is determined by the facts, and not by how the parties characterize the relationship." National Security Fire Casualty Co. v. Bowen, 447 So.2d at 137.
On the issue of fraud, the law is clear, and the trial court instructed the jury, that four elements must be present: 1) a false representation; 2) concerning a material fact; 3) upon which the plaintiff relies; and 4) by which the plaintiff is damaged as a proximate result. Jarrard v. Nationwide MutualInsurance Co., 495 So.2d 584 (Ala. 1986); Dickinson v. Moore,468 So.2d 136 (Ala. 1985). This is true whether the representation is made willfully, recklessly, or mistakenly.Sessions Co. v. Turner, 493 So.2d 1387 (Ala. 1986). Vincent and Scott were promised that the truck was good for at least a year and that they would have financial help if necessary. They were also told that the loss of water was due to the truck's sitting on the lot and that it had been driven 16,000 miles during that time; however, there was further evidence that the odometer reading on the truck when they bought it was 11,000 miles less
than the mileage on it when it was repossessed from the previous owners.
The questions of fraud and agency were for the jury, and it obviously found that Parris himself made a false representation to Vincent and Scott; or that Murphy, as the agent of Transport Acceptance, made such a representation; or that they both did. "A jury's verdict is presumed correct [if supported by the evidence] and will not be disturbed unless plainly erroneous or manifestly unjust. This presumption of correctness is further strengthened when a motion for new trial is denied by the trial judge." Pate v. Sunset Funeral Home, 465 So.2d 347, 350 (Ala. 1984). (Citations omitted.) Plaintiff's motion for new trial was denied. Upon a review of the record, this Court does not find the jury's verdict to be plainly erroneous or manifestly unjust.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.