CRAWLEY, Judge,
concurring in part and dissenting in part.
I concur in the majority’s holding to reverse the trial court’s entry of the summary judgment in favor of the real estate agent and the real estate company. However, I dissent from the majority’s holding to affirm the trial court’s entry of the summary judgment in favor of the sellers of the home.
The majority held that the sellers did not themselves commit fraud and concealment and that the real estate agent and real estate company were not acting as the sellers’ agent.
First, the sellers signed a Sellers’ Disclosure Statement which provides, in pertinent part:
“A. ARE YOU (SELLER) AWARE OP ANY PROBLEMS OR POTENTIAL PROBLEMS, PAST OR PRESENT, WITH ANY COMPONENT OF YOUR PROPERTY (Defects, Malfunctions, etc.) YES X NO”
[[Image here]]
“B. ARE YOU (SELLER) AWARE OF ANY OF THE FOLLOWING:
[[Image here]]
“4. Flooding, drainage or grading problems. (Is property in flood plain?) YES X NO”
*377 If the allegations of the Turners’ (the “buyers”) complaint of fraudulent misrepresentation, fraudulent concealment, fraudulent inducement, negligence and wantonness, as set out in the majority’s opinion, were proven at trial, the jury could conclude that the answers made by the sellers to these two specific questions were false. The buyers’ agent testified that he and the buyers went through the house inspecting it for defects and that they discussed the Sellers’ Disclosure Statement. Because it listed no defects, the buyers decided not to employ a home inspection service. In the recent case of Cruse v. Coldwell Banker/Graben Real Estate, Inc., 667 So.2d 714 (Ala.1995), our supreme court reversed a summary judgment in favor of the real estate agent and real estate company because the house was listed as “new” and the buyers failed to inspect the house before purchase. In its holding, the supreme court stated:
“Graben Real Estate did not represent the house to be ‘almost new,’ ‘like new,’ or ‘good as new; any such representation might be deemed to be a, mere expression of the realtor’s opinion. Instead, Graben Real Estate marketed the house as ‘new,’ both in print and in direct response to the Cruses’ queries. In so doing, Graben Real Estate made statements that went beyond the patter of sales talk and became representations of material fact; 'Moreover, Gary Cruse testified in deposition that he relied upon this representation in failing to hire a contractor to inspect the house before he bought it. Cruse testified that he had planned to hire a contractor, but was dissuaded, partly because he thought that ‘it was a new house, it’s got to have at least a oné-year warranty with it, and anything wrong with it, they’ll stand good for it.’ ”
667 So.2d at 716 (emphasis added).
Immediately above the sellers’ signatures on the Seller’s Disclosure Statement is the statement: “SELLER CERTIFIES THAT THE INFORMATION HEREIN IS TRUE AND CORRECT TO THE BEST OF THE SELLER’S KNOWLEDGE AS OF THE DATE SIGNED BY THE SELLER.” These facts create a disputed issue for a jury to decide whether the buyers justifiably relied upon the statements that there were no problems in general and specifically, no drainage problems.
Second, the majority held that the real estate agent and the real estate company were not acting as agents for the sellers because there was no evidence that the sellers exercised control over them. This argument misses the point because there was no question that the real estate agent and the real estate company were acting as agents for the sellers because the sellers signed a Sales Authority with, the real estate company and real estate agent. The very first sentence states:
“In consideration of your agreement to list my real property in your office in your customary manner and to use your efforts to procure a buyer, I hereby grant to you the exclusive, irrevocable right and privilege to sell my real property known as:
(Emphasis in original.)
They also executed a Century 21 Seller Service Pledge wherein Century 21 agreed, among other things, to:
“1. Provide a marketing plan for the property to include, as appropriate, recommended promotion and other activities, along-with a ‘schedule of events’ outlining those marketing steps mutually agreed upon.
[[Image here]]
“7. Provide regular progress reports throughout the marketing period and discuss with you comments received about your property.
[[Image here]]
“10. Submit to you all written offers as presented; assist with negotiations; and provide an estimate of your net sales proceeds prior to acceptance.
“11. Upon acceptance of an offer by you, monitor pre-settlement (escrow) activities throughout the closing process as permitted by law or local practice.”
(Emphasis added.)
These documents clearly set forth the terms of an agency relationship between the sellers as principals and the real estate agent and the real estate company as agents. In *378 Cordes v. Wooten, 476 So.2d 89 (Ala.1985), our supreme court stated:
“The law states that a principal is liable for the acts of an agent done in the interest of and in the prosecution of the principal’s business, if the agent is acting within the scope of his employment. To constitute agency, there must be a meeting of the minds of both the principal and the agent as to the scope of employment.”
[[Image here]]
“It is elementary that the test of agency is the right of control, whether exercised or not, and that is a question for the trier of fact if the evidence is in dispute.”
476 So.2d at 90-91 (citations omitted).
These documents create a disputed issue of fact as to whether the real estate agent and real estate company were acting as the sellers’ agent, and the issue of agency is inappropriate for disposition by summary judgment.
ROBERTSON, P.J., concurs.