On Second Application For Rehearing
The opinion of March 20, 1998, is withdrawn, and the following is substituted therefor.
The plaintiffs, McIver L. Paulk, Thomas B. Paulk, Sr., and Annie Pearl Smith, petition for a writ of mandamus directing Judge William T. Gaither of the Bullock Circuit Court to vacate his order transferring their action from Bullock County to Marion County. We grant the petition.
In August 1994, McIver L. Paulk, a resident of Montgomery County, and Thomas B. Paulk, Sr., a resident of Bullock County, purchased a mobile home in Bullock County from King's Mobile Homes, Inc. ("King"). The mobile home was manufactured by Buccaneer Homes of Alabama, Inc. ("Buccaneer"), located in Marion County. In May 1994, Annie Pearl Smith, a resident of Bullock County, purchased a Buccaneer mobile home from King. Buccaneer sold mobile homes in Bullock County through King, pursuant to a "Dealer Agreement." Buccaneer provided a written warranty covering each mobile home for defects in material and workmanship. On August 25, 1994, King stopped selling Buccaneer mobile homes. On August 4, 1995, the plaintiffs filed a complaint in the Bullock Circuit Court against Buccaneer and several fictitiously named defendants. The complaint alleged breach of warranty and stated two counts of fraud. The plaintiffs sought compensatory damages, including damages for mental anguish arising under the breach-of-warranty claim, and punitive damages under the two fraud claims.
In September 1995, Buccaneer moved to have the action dismissed for improper venue or, alternatively, to have the action transferred to the Circuit Court of Marion County. On November 18, 1996, Judge Gaither granted Buccaneer's motion to transfer the action to Marion County. Buccaneer argues that under Ala. Code 1975, § 6-3-7, venue is proper only in Marion County.
The plaintiffs allege breach of warranty, fraudulent misrepresentation, and fraudulent suppression against Buccaneer, and they seek compensatory damages, including damages for mental anguish, and punitive damages. We must determine whether venue for these claims was proper in Bullock County, where the action was filed, or, as Buccaneer contends, was proper only in Marion County.
Buccaneer is a domestic corporation; therefore, the venue statute to be applied is that portion of § 6-3-7, Ala. Code 1975, relating to domestic corporations. Because we find that there is substantial evidence that misrepresentations were made in Bullock County and substantial evidence that an agency relationship existed between Buccaneer and King, we will pretermit discussion of the breach-of-warranty claim. Therefore, the rule applicable in this case is that rule set out in what we here label as subpart 2 of § 6-3-7:
 "[1][A] domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose; provided, [2] that all actions against a domestic corporation for personal injuries must be commenced in the county where the injury occurred or [3] in the county where the plaintiff resides if such corporation does business by agent in the county of the plaintiffs residence."
It is only in personal injury actions against domestic corporations that the legislature, by the proviso contained in § 6-3-7, has limited venue to the county where the injury occurred or the county of the plaintiffs residence if the corporation does business there. See Ex parte Blount,665 So.2d 205 (Ala. 1995); Ex parte Townsend,589 So.2d 711 (Ala. 1991); Ex parte W.S. Newell, Inc.,569 So.2d 725 (Ala. 1990).
The plaintiffs purchased their mobile homes from King in Bullock County. Two of *Page 173 
the plaintiffs, Thomas B. Paulk, Sr., and Annie Pearl Smith, reside in Bullock County. On each mobile home manufactured by Buccaneer and sold by King, Buccaneer provided a warranty covering defects in materials and workmanship. Pursuant to the "Retailer Service Agreement" between King and Buccaneer, King was required to present each customer with a copy of the Buccaneer warranty before the retail sales contract was executed and to provide Buccaneer with a completed warranty card stating the customer's name, address, and date of purchase. King was also required to notify Buccaneer of any defects in a Buccaneer home no later than five business days after receiving the service request.
Buccaneer contends that it was not doing business by agent in Bullock County. Specifically, Buccaneer argues that King cannot be its agent because the Dealer Agreement expressly states that no agency relationship exists. Buccaneer also argues that no agency relationship existed between it and King because it had no control over the activity of the dealer. The plaintiffs contend, however, that the Retailer Service Agreement constituted substantial evidence suggesting an agency relationship under which King was Buccaneer's agent for presenting the manufacturer's warranty and for doing warranty repair in Bullock County. This Court stated in Tomlinson v.G.E. Capital Dealer Distributor Finance, Inc.,624 So.2d 565, 567 (Ala. 1993), that a contract term disavowing an agency relationship is not conclusive and will not preclude a finding of an agency relationship if there is independent evidence of a retained right of control. The Retailer Service Agreement provides, among other things, the following:
 "1. Retailer will assume responsibility for properly setting up Buccaneer homes it sells to retail purchasers, unless the retail purchaser elects to provide for the set up of his or her own home.
 "2. Retailer will provide each retail purchaser with a copy of the Buccaneer warranty before execution of the retail sales contract.
 "3. (a) . . . Retailer will commence warranty service as soon as possible, but in no event later than three business days following receipt of notice of each defect, and will complete such repairs expeditiously.
 "(b) Retailer will complete all warranty service other than [that] specified in subparagraph 3(a) above, within a reasonable time in the normal course of business, not to exceed thirty days following receipt by Retailer [of] the service request.
 . . . .
 "7. Retailer will maintain or contract for service personnel and facilities which, in Buccaneer's reasonable judgment, are adequate to check out, deliver, set up and service Buccaneer Homes.
 "8. In the event of termination of the retailership, Retailer will provide the same warranty service, as would otherwise be provided, on Buccaneer homes still under warranty or not yet sold to retail purchasers.
 "This agreement may be terminated by either party giving thirty days written notice; however, the commitments made by each party hereto will apply to all homes delivered prior to the termination of the Agreement. Retailer understands Buccaneer's intention to terminate this agreement upon failure to meet Retailer's responsibilities under this agreement."
In Wood v. Shell Oil Co., 495 So.2d 1034 (Ala. 1986), we stated:
 "The test to be applied in determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance. Williams v. Tennessee River Pulp Paper Co., 442 So.2d 20
(Ala. 1983). The retained right to supervise the alleged agent to determine if that person conforms to the performance required by a contract with the asserted principal does not, itself, establish control."
495 So.2d at 1036. This Court in Brown v. CommercialDispatch Pub. Co., 504 So.2d 245 (Ala. 1987), expressed the principle thus:
 "Whether one is the agent of another is ordinarily a question of fact to be decided by the jury. Daugherty v. M-Earth of Alabama, Inc., 485 So.2d 1145 (Ala. 1986). *Page 174 
As was stated in Cordes v. Wooten, 476 So.2d 89 (Ala. 1985): `It is elementary that the test of agency is the right of control, whether exercised or not, and that is a question for the trier of fact if the evidence is in dispute.' For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Solmica of the Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638 (1970). An agency relationship is not created when the employer merely retains the right to supervise or inspect the work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications and retains the right to stop work that is not properly done. Weeks v. Alabama Elec. Co-op., Inc., 419 So.2d 1381 (Ala. 1982)."
504 So.2d at 246.
This case is conceptually difficult because the result sought to be accomplished by Buccaneer (i.e., the expeditious repair or setup of mobile homes under warranty) is one and the same as the manner in which that result was sought to be accomplished. If King performed repairs expeditiously with service personnel and facilities deemed adequate in Buccaneer's judgment, then it also accomplished the result sought by Buccaneer. King was also under the direct supervision of Buccaneer in that Buccaneer retained the right to terminate the contract if, in Buccaneer's judgment, King did not comply with the terms of the agreement. Thus, the plaintiffs presented substantial evidence indicating that Buccaneer directed the manner in which warranty repairs were to be performed, as well as how they were to be performed, under the Retailer Service Agreement.
The plaintiffs also presented substantial evidence indicating that oral misrepresentations were made to them in Bullock County by a representative of King, at a time when King was acting as an agent of Buccaneer Homes. The plaintiffs presented the affidavit of A.C. King, president of King's Mobile Homes, who stated, in pertinent part:
 "Buccaneer Homes of Alabama has delivered numerous mobile homes to my business in the past and continued to deliver mobile homes up until the Summer of 1994. Furthermore, Buccaneer issued a warranty with these mobile homes and had me or my employees explain these warranties to potential buyers. When we explained Buccaneer's warranty, we acted as agents of Buccaneer. King's Mobile Homes does not issue a warranty on any of the mobile homes we sell except through Buccaneer and the warranty it issues."
(Emphasis added.)
The plaintiffs also presented affidavits from Thomas B. Paulk, Sr., Annie Pearl Smith, and McIver L. Paulk. Each of them stated in the affidavit that one of the reasons they purchased a Buccaneer home was the warranty presented to them and explained by Mr. King, who they said they believed was an agent of Buccaneer with knowledge of the intricacies of the Buccaneer warranty. We find that these affidavits present substantial evidence indicating that oral misrepresentations were made by King's Mobile Homes in Bullock County to the plaintiffs in Bullock County at the time of the sale of the mobile homes.
The plaintiffs' fraud claims alleging that King's Mobile Homes, as an agent of Buccaneer, committed fraudulent acts against them in Bullock County are based upon these oral misrepresentations, which occurred in Bullock County. Therefore, under § 6-3-7, venue as to the fraud claims against Buccaneer is clearly proper in Bullock County. Because venue is proper in Bullock County for the fraud claim, it is also proper in that county for the breach-of-warranty claims.
Where venue is proper in more than one county, theplaintiff may elect the forum county and the election stands, unless venue is improper in the chosen forum or the defendant demonstrates that under the doctrine of forum nonconveniens the case should be transferred to another county. See Medical Service Administration v.Dickerson, *Page 175 362 So.2d 906 (Ala. 1978). The plaintiffs elected Bullock County as the forum, and we conclude that Bullock County is a proper forum, given the facts of this case.
Because venue is proper in Bullock County, the trial court incorrectly granted Buccaneer's motion to dismiss the action for improper venue or, alternatively, to transfer it to the Marion Circuit Court. Buccaneer has not shown a clear legal right to have the action dismissed or transferred to the Marion Circuit Court.
The plaintiffs' petition for the writ of mandamus is, therefore, due to be granted. The trial court is directed to vacate the order transferring the cause to the Circuit Court of Marion County and to restore the cause to the docket of the Circuit Court of Bullock County.
APPLICATION OVERRULED; OPINION OF MARCH 20, 1998, WITHDRAWN; OPINION SUBSTITUTED; WRIT GRANTED.
ALMON, SHORES, and KENNEDY, JJ., concur.
HOOPER, C.J., and HOUSTON, J., concur specially.
SEE and LYONS, JJ., concur in the result.
MADDOX, J., dissents.