232 So.2d 657

**Maud P. SHORES**

v.

**Mary S. TERRY.**

**Joe F. SHORES**

v.

**Mary S. TERRY.**

**6 Div. 626, 626–A.**

Supreme Court of Alabama.

March 5, 1970.

Walter Cornelius, Birmingham, for appellants.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

HARWOOD, Justice.

Three automobiles were involved in a collision, or collisions, on the Green Springs Highway in Birmingham. All three automobiles were proceeding in a northerly direction on the four lane highway, which has a median separating the northbound lane from the southbound lane. The collision occurred around 8:35 A.M., as most users of the highway were proceeding to their work.

Mrs. Maud P. Shores was driving what we will designate as the lead automobile, with Dr. Dan Lester McKeslin's automobile following, which in turn was followed by an automobile driven by Miss Mary S. Terry.

The Terry automobile struck Dr. McKeslin's automobile in the rear which was knocked into the Shores' automobile by the force of the impact.

Thereafter, Mrs. Shores filed a suit against Miss Terry seeking damages for the alleged negligence of Miss Terry in proximately causing her claimed damages. Mr. Shores also filed suit against Miss Terry seeking damages for loss of his

, wife's consortium, and certain catalogued special damages.

The suits were consolidated for trial. The jury returned a verdict for the defendant in each case, and judgments were entered pursuant to the verdict. The plaintiffs' motions for new trials being overruled, appeals were perfected to this court.

In the trial below Mrs. Shores testified on direct examination that at the time of the collision she was in a line of traffic proceeding north on the highway "at a snail's pace, maybe 10 to 15 miles per hour. I don't have any idea."

"Q. Had you come to a stop?

"A. I don't believe I came to a stop. I cannot answer that, I don't know."

On cross examination, Mrs. Shores testified she could not really say whether she had come to a stop or not. The automobiles in front of her were barely moving, or moving at a snail's pace because of a bottleneck condition of a curve up in front.

When Dr. McKeslin's automobile struck her automobile, it traveled ahead one or two spaces up close to, but not against, the automobile in front of hers.

After the accident, Mrs. Shores remained in her automobile. She was stunned and nauseated.

In a short while her husband arrived and drove her, in her automobile, to a hospital.

Mrs. Shores testified at length as to her hospitalization, bed rest at home in traction, and her pain and suffering since the accident. Dr. Meyer, her attending physician, also testified as to his observation and treatment of Mrs. Shores. Mr. Shores gave testimony along the same line, and as to Mrs. Shores' inability to work, either at her job or at home for some weeks after the collision. Such evidence is of no material importance in this review if the verdict of the jury, in effect finding Miss Terry free of negligence, is due to be af-

firmed. We therefore refrain from detailing this evidence.

For the plaintiff-appellants, Dr. McKeslin testified that at the time of the collision he was driving in the right lane. Traffic was moving along at a usual rate with the automobiles spaced pretty close. The traffic slowed as it approached a curve and he began putting on his brakes slowly. At this time he was hit from the rear "pretty hard." He was driving 15 to 20 miles per hour at the time of the impact which caused him to lose control of his automobile—he was not able to keep his foot on the brake pedel. His automobile was knocked into the Shores' automobile which was moving at about the same speed as his. Dr. McKeslin further testified he had settled his claim "with the insurance company—with the defendant."

Miss Terry, the defendant below, testified that just prior to the accident she had been driving in the right lane back of Dr. McKeslin's automobile. The traffic was moving at about 15 to 20 miles per hour. The lane to her left was clear. She looked in the rear view mirror of her car, and glanced over her shoulder to the left to see if any automobiles were in the "blind spot" as she was preparing to move into the left lane. She did not know how fast Dr. McKeslin's automobile was traveling when she again looked ahead as he had hit his brakes and she had applied her brakes preparatory to turning into the left lane. Counsel for appellant have narrated Miss Terry's testimony in brief, and we quote the following portion of Miss Terry's testimony as accurately narrated in brief:

"* * * The witness further testified that if Mrs. Shores had not stopped before the impact, she was not going over 2 miles an hour, it appearing to the witness that she had stopped. The witness further testified that Dr. McKeslin's car stopped after Mrs. Shores stopped. The witness further testified that she had seen the two cars ahead of her—the McKeslin car and the Shores car the whole time she was driving, hav-

ing followed them quite a distance. The witness further testified that Mrs. Shores' car had not stopped before she, the witness, started turning. * * *"

The appellants have made two assignments of error. The first is that the court erred in overruling appellants' motion for a new trial.

Under this assignment the thrust of appellants' argument relates to those grounds of the motion for a new trial asserting that the verdict is contrary to the great preponderance of the evidence; that it was the result of bias and prejudice on the part of the jury, and was a gross miscarriage of justice.

■ A jury verdict carries with it a presumption of correctness and when, as here, the trial judge refuses to grant a motion for a new trial, such presumption is strengthened. Pearson v. Fountain, 280 Ala. 1, 189 So.2d 551.

■■ A reviewing court must consider the evidence in the light most favorable to the party prevailing below. Cooper v. Watts, 280 Ala. 236, 191 So.2d 519; The Jeffrey Mfg. Co. v. Hannah, 268 Ala. 262, 105 So.2d 672. Where different inferences may reasonably be drawn from facts, the right of both parties in a negligence action to have a jury pass upon the question of liability is paramount. Patterson v. Seibenhener, 273 Ala. 204, 137 So.2d 758, and authorities therein cited.

■ In view of the principles and presumptions above alluded to, we do not feel we would be justified in saying that the evidence, or reasonable inferences therefrom was so strong in tendencies establishing the defendant's conduct as the proximate cause of the collision, or that the plaintiff's conduct in bringing her automobile to a sudden slowing down, or stopping, under the conditions shown by defendant's testimony, was not the proximate cause of plaintiff's injuries. This being so, we are not in position to say that the verdict and judgment are palpably wrong and unjust.

■ Appellant's second assignment of error asserts error in the action of the court in sustaining defendant-appellee's objection to the following question propounded by the appellants to the witness Dr. McKeslin:

"Q. What about the type or magnitude of that impact, how would you describe it, Doctor?"

The objection to the above question was properly sustained. It sought to elicit an answer that would amount to nothing more than a speculative and impressionistic opinion on the part of the witness.

We note that the evidence sought by the question was not in that uncertain twilight zone wherein the distinction between opinion evidence and factual evidence by a lay witness is difficult if not impossible to describe. The varying opinions in this area are often impossible of reconciliation. In fact the elder Mayfield, J., in Central of Georgia R. Co. v. Jones, 170 Ala. 611, 54 So. 509, stated:

"The condition of the authorities on the subject is little better than a state of anarchy."

A full review and discussion of the decisions relating to opinion evidence by a lay witness, and the impossibility of reconciling them may be found in Judge McElroy's "Law of Evidence in Alabama," Vol. 1, 2nd Ed., pp. 296-305, and we refer interested parties to this text material.

Additionally, Dr. McKeslin had testified to facts from which the jury could reasonably infer the "magnitude" of the impact. He stated in his testimony:

"I was hit pretty hard * * * I was hit from the rear pretty hard. My car was a total loss * * * The rear was damaged more than the front, but both were damages * * * So, I was hit real hard. And it bent my seat. The seat I was sitting in was bent back

* * * maybe an inch or something like that, after I looked at it after it was on the car lot, you know, when it was wrecked for junk."

Thus the appellants had the full benefit of factual testimony tending to establish the opinion evidence sought by the question to which the objection was sustained. For this reason no injury probably injurious to any substantial right of the appellants could have resulted in any event from the ruling complained of in assignment of error No. 2.

Affirmed.

LIVINGSTON, C. J., and MERRILL, MADDOX and McCALL, JJ., concur.