This is an appeal from a judgment entered on a jury verdict of $300,000 for the plaintiff, John James Brown, and against the defendant, John R. Cowley Brothers, Inc. ("Cowley"), an Alabama corporation. We affirm.
Brown received very serious injures when a steel tank he was cutting with a blow torch exploded. Brown sued, alleging that negligence and/or wantonness on the part of Cowley was the proximate cause of the severe burns that he suffered in the explosion. His complaint alleged that the defendant was negligent and/or wanton in representing to him that the tank in question had been cleaned and thus was not dangerous. He alleged in his complaint that his hands, arms, face, and body were severely burned. He further alleged that he received a burn to his throat so serious that his larnyx, or voice box, had to be surgically removed, resulting in his loss of speech. Cowley filed a motion for summary judgment or, in the alternative, a motion in limine, directed at Brown's allegation that his laryngectomy resulted from the explosion, contending that it was due to cancer. The trial judge sustained Cowley's objection to any questioning relative to any causal connection between the cancer and the burn. Cowley also raised the affirmative defense of contributory negligence.
Cowley filed a motion for a directed verdict, which was granted as to all but a single count. At the conclusion of the trial, the judge heard the argument of counsel and stated: "All right. What I am going to do is send the case to the jury on the single claim that the defendant was guilty of negligence in furnishing to the plaintiff's employer a tank which was represented by the defendant to be clean or appropriate for being cut up." (R.T. 284.) On June 26, 1989, the jury returned a verdict in favor of Brown. Cowley filed a motion for a JNOV, or, in the alternative, for a new trial, which was denied by the trial judge. This appeal followed.
Cowley first contends that Brown failed to prove by substantial evidence that Cowley breached a duty owing to him. It next contends that Brown failed to prove by substantial evidence that the representations made to him were made by an agent of Cowley acting within the line and scope of his employment. Finally, Cowley contends that Brown was contributorily negligent as a matter of law, and is, therefore, barred from recovery. There is no dispute as to the extent of Brown's injuries and the amount of damages awarded. There is no claim that the award is excessive.
The three arguments raised by Cowley on appeal all revolve around the question of the sufficiency of the evidence. Cowley argues that the trial court erred in failing to direct a verdict and in failing to enter in its favor a judgment notwithstanding the verdict on the issues of agency and negligence, and that Brown was guilty of contributory negligence. "The law of Alabama is clear as to the standards for testing a motion for directed verdict and a motion for judgment notwithstanding the verdict (JNOV). The standard for testing a motion for directed verdict is identical to that for testing a motion for JNOV. Casey v. Jones, 410 So.2d 5 (Ala. 1981). Both motions test the sufficiency of the evidence.Wright v. Fountain, 454 So.2d 520 (Ala. 1984)." Black Belt WoodCo. v. Sessions, *Page 377 514 So.2d 1249, 1251 (Ala. 1986). Evidentiary challenges, except on grounds of admissibility, are divided into two separate and distinct categories: sufficiency of the evidence raised by motion for JNOV and measured by the substantial evidence rule; and weight and preponderance of the evidence, raised by motion for a new trial and measured by the "palpably wrong and manifestly unjust" standard. Nelson Bros. Inc. v.Busby, 513 So.2d 1015, 1018 (Ala. 1987), quoting BurroughsCorp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala. 1982).
Substantial evidence is defined as "evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven." Code 1975, § 12-21-12(d); Economy Fire Cas. Co. v.Goar, 551 So.2d 957, 959 (Ala. 1989); see also Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989).
The evidence before us indicates that Brown worked as a scrap metal cutter for James Anderson. His job was to cut large steel fabrications into one-foot by three-foot pieces. The site at which he worked was divided into five cutting lanes. He was in lane three. He testified that the large steel fabrications were delivered on trucks belonging to Cowley.
Brown testified that equipment such as trucks, cranes, and magnet trucks, belonging to Cowley, came to the cutting site to retrieve the scrap steel, which was hauled to be weighed at Cowley's scales, a short distance away. Brown further testified that no scrap metal company other than defendant Cowley weighed the scrap metal. Brown never witnessed any steel being picked up that was not picked up by Cowley's trucks.
James R. Brewer, president and owner of Freeman Wrecking Company, rented the cutting site to James Anderson. Brewer testified that he was there every day and could observe the yard. Brewer testified as follows:
 "Q. [Mr. Kulakowski:] Can you tell the jury where this — these cutting lanes got their raw steel to cut?
"A. [Mr. Brewer:] From Cowley.
 "Q. Okay. Can you tell the jury who got the raw steel once it was cut up into one-by-three pieces?
"A. Cowley came and picked it up.
 "Q. Did you ever know of any other business that would pick up steel from those lanes?
"A. No, sir.
"Q. Only Cowley?
"A. As far as I know.
 "Q. Okay. And you were there to watch it, were you not? You have got kind of a bird's-eye view, do you not?
"A. Right."
(R.T. 38-39.)
Brewer testified further that he had had occasion before the date of the accident to see Cowley's trucks going into and out of the cutting site, and that he knew the Cowley trucks and drivers by sight. He had known them as Cowley employees for years. Brewer testified that Anderson owned only a pick-up truck and that only Cowley owned big trucks and magnetic loaders. The testimony of Emmitt Dubose, Cowley's president, confirms that only Cowley owned big trucks, although he disputes whether a Cowley truck delivered the tank that exploded. Dubose testified that all of the Cowley trucks had the name "Cowley Brothers, Inc." on the side of the truck. However, Brewer said that he did not recall Cowley's green Mack trucks having the Cowley name on them. Brewer also testified that he never saw any other company's trucks parked at the cutting site except Cowley's.
Brewer testified that at the cutting site Cowley had bins called "roll-off boxes," which would be filled up with scrap iron, and that the Cowley trucks, which had been specially adapted for that purpose, would hook up to them and haul the scrap to Cowley's yard. Dubose testified that Cowley had such bins at many sites throughout Mobile.
The testimony reflects that there was no office, no bathroom, and no scrap cleaning facility at the cutting site. Brown testified that Jim Anderson often used Cowley's office *Page 378 
for the business that was generated from the scrap.
Brewer, who had been in the scrap business for 25 years, testified that before such tanks should be scrapped the tanks could be cleaned by various methods, but must be cleaned. He testified that he had never observed any type of cleaning equipment at the cutting site. Brown testified that he is knowledgeable about fuel tanks and that he knew that the tanks had to be either steamed or washed with water to the very top so that they would not blow up when one started to cut them.
Brown testified that on the day prior to the explosion, he arrived at work and found a tank in his cutting lane. He said he was told by Jim Anderson that the tank was clean and that he cut the tank into scrap. On the same day, Brown testified, he specifically recalled that a green truck became stuck in the mud on his cutting lane. He said that although the truck did not have the Cowley name on its side, he recognized it as being a Cowley truck. Brown said it was driven by a "heavyset" black man that Brown recognized because of his having driven a Cowley truck on earlier occasions, and Brown said that he had talked to this man about who the man worked for. Brown testified that he talked to the truck-driver about the tank, and that the driver said it was clean and that it was like the one Brown had cut up that day. Brown stated that he believed the truck driver when the driver told him that the tank had been cleaned and that it was just like the one he had already cut. He said that he did not work on the tank that day because it was raining.
On the morning of November 6, 1986, Brown went to work, hooked up his blow torch, lit it, and heated the tank delivered to him on the previous morning. The tank exploded, knocking him about 10 or 12 feet away from the tank. He was badly burned and was put in great pain. He testified that these injuries have resulted in his being unable to work and being so sensitive to heat and cold that he no longer enjoys recreational activities. James and Diana Godwin both testified to Brown's weakened condition since the accident and to his alleged sensitivity to heat and cold. Expert testimony was given by Dr. Arnold Luterman, M.D., as to Brown's injuries.
Emmitt Dubose, president of Cowley, testified that James Anderson was not an employee of Cowley's, but that Cowley did have a scrap bin located at his yard. Dubose testified that Anderson approached him one day and said that he was going into the scrap business and wanted to know if Cowley would be willing to sell him any scrap. Dubose agreed to sell him large scrap that he could not run through Cowley's shearer and that had to be cut up with a torch. Anderson told Dubose he was going to try to find some property close by. Dubose testified as follows:
 "Q. [Mr. Smith:] Okay, now with those pieces of scrap, what was the deal with Mr. Anderson? What would you do with those pieces of scrap?
 "A. [Mr. Dubose:] Well, that was the only stuff I was interested in selling him, and he would come up in the yard and look at it and make me a price on it, and, if I wanted to accept it, well then we would, you know, load it up and bring it down there to him." (R.T. 232-233.)
Dubose said that he sold large scrap to Anderson, who cut it up and then sold it back to him. He stated that Anderson also bought and sold from Klean Steel. Dubose testified as follows:
 "Q. [Mr. Kulakowski:] Now, you testified that Mr. Anderson just had a pickup truck; is that correct?
"A. [Mr. Dubose:] Right.
"Q. And Cowley had the big trucks?
"A. That's right.
 "Q. Okay. And Cowley used the big trucks and Mr. Anderson supplied the labor for the scrap and the steel?
"A. Do what now? Mr. Anderson supplied what?
"Q. He supplied the men to scrap the steel?
"A. Yes, to prepare it, yeah.
 "Q. Okay. So Cowley supplied the trucks and he supplied the men to prepare it? *Page 379 
 "A. Yeah. Whenever he ordered a truck, I sent it to him.
 "Q. And it was convenient because you had the scales right down there?
 "A. Yeah. He would come up and witness weighing every time. "Q. And so what happened was he would need steel, you would send it to him, and if he had scrap steel, you would go pick it up and weigh it, and y'all would settle up at your office?
 "A. Well, he would come up there and watch it be weighed. He stayed in the scale house. He did not come into my office.
 "Q. Okay. And then take the money back to pay the men?
 "A. Well, he would ask for a check sometime; sometimes he would wait and pick the check up on Friday." (R.T. 26162.)
Dubose testified that on the day prior to the accident a man named Tony Elmore tried to sell an underground tank to Cowley. Dubose said Cowley would not buy underground tanks because they are too dangerous to deal with.[1] Dubose then testified that he saw the underground tank he had refused to purchase lying right near the bin in the Freeman yard. He said he drove into the yard and saw James Anderson and told him that a man had tried to sell him the tank, but that it was dangerous, and that he would not dare put a torch to it.
Dubose testified that the accident occurred the next morning and that although he did not go to the scene that day, he went there several days later and found the tank Elmore had tried to give him; the end had been blown out. He testified that he contacted Brewer after the lawsuit was filed, and that Brewer told him that the man who brought the tank was Tony Elmore and that Elmore lived in Theodore.
Tony Elmore's testimony was offered by the defense. He testified that he dug up two underground fuel tanks in 1986. He said he did not know the month, but thought it was around November. He testified that he first took them to the Cowley yard but that Cowley did not want the tanks. Elmore said he thought he talked to Dubose on that occasion. Elmore testified that he then went to Freeman Wrecking Company and gave the tanks to some men renting a place from Brewer. Elmore stated in his testimony that he made two trips to Freeman Wrecking Company and rolled the two tanks off by the fence. He said that he did not dump them in a cutting lane, and that his truck did not get stuck in the yard. Elmore also stated that later he offered Brewer some tanks but that he would not accept them. He testified that Brewer said "one of them blew up."
Brewer's testimony disputes this. Brewer testified that he had a conversation with Elmore in November 1986 concerning some tanks for which Elmore had no space, and that Brewer told Elmore to bring them to his yard if they were good tanks. He testified that Elmore brought the tanks and placed them inside the gate. Brewer testified that those tanks are on his yard now being leased to oil recovery people. Both Brewer and Elmore testified that the underground tanks were not dumped on a cutting lane.
Brown based his claim upon actionable negligence. "The necessary elements for recovery under a negligence theory are: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." Jones v. Newton, 454 So.2d 1345, 1348 (Ala. 1984), citing Mascot Coal Co. v. Garrett, 156 Ala. 290, 47 So. 149
(1908). See also Rutley v. Country Skillet Poultry Co.,549 So.2d 82, 85 (Ala. 1989).
Cowley contends that Brown failed to provide substantial evidence that Cowley breached a duty owing to him. We do not agree. Brown was allowed to go to the jury on a single claim. The trial judge rejected Brown's claim that Cowley had a duty to provide Brown with safe working conditions and to deliver steel fabrications *Page 380 
that were safe to be cut with torches. The trial judge gave Cowley a directed verdict on Brown's allegation that Cowley had a duty to affirmatively warn Brown that the steel tank had not been thoroughly cleaned and that it was highly combustible and that there was a danger of explosion. The trial judge allowed Brown to go to the jury solely on his claim that Cowley "had a duty not to negligently represent to the Plaintiff that the steel tank had been thoroughly cleaned and was safe to cut for scrap." (C.R. 2.) The trial judge restricted the submission to the jury to the issue of whether Cowley was "guilty of negligence in furnishing to the Plaintiff's employer a tank which was represented by the Defendant to be clean or appropriate for being cut up." (R.T. 284.) When counsel for Cowley objected that there was no misrepresentation count, the trial court allowed the plaintiff to amend to meet the evidence. (R.T. 286.) The trial judge charged the jury as to the negligence claim as follows:
 "Now, dealing specifically with the claims in this case, it is the contention of the plaintiff that he suffered an injury which was proximately caused by the negligence of the defendant. Like the parties, I am going to refer to the defendant simply as Cowley rather than by its full name and plaintiff as Mr. Brown. Mr. Brown claims that the defendant Cowley was guilty of negligence which proximately caused the injuries of which Mr. Brown now complains. That negligence is alleged to have consisted of the defendant Cowley furnishing to the plaintiff or the plaintiff's employer a steel tank, or barrel or container, or whatever, which was alleged to — or which it is claimed by Mr. Brown that was represented to him by an employee of Cowley to be clean and proper for being subject to being cut with a cutting torch into pieces. Mr. Brown contends that the tank was not, in fact, clean and ready to be cut into pieces and that the conduct of the alleged employee of Cowley in so representing was negligent, and that in consequence of the alleged negligence Mr. Brown suffered injuries of which he claimed — of which he now complains." (R.T. 325-26.)
The law imposed no duty upon Cowley's employee to make a statement as to the condition of the steel tank. However, once the Cowley employee undertook to make a representation with regard to the condition of the tank, the law required him to speak the truth; thus a question of fact was presented with respect to whether the representation was true or false and whether it was made intentionally, recklessly, negligently, or innocently. Additionally, a fact issue was presented as to whether the plaintiff acted upon the representation.
The issue was narrowed to the following: Did the employee of Cowley falsely represent the condition of the tank, even though the law did not require him either to warn of any danger that might exist with respect to it, or to disclose any defect that might exist with respect to it? Indeed, the law would not have required the employee, under these facts, to make any representation at all.
If the jury answers this question affirmatively, the law imposes liability. There is one form of action in Alabama, known as a "civil action," in which all claims between the parties should be litigated. Whitehead v. Hester,512 So.2d 1297, 1300 (Ala. 1987), citing Du Boise v. Brewer,349 So.2d 1086 (Ala. 1977); Rule 2, A.R.Civ.P. "Alabama law, even prior to the effective date of the Alabama Rules of Civil Procedure, was to the effect that the character of a pleading was determined by its essential substance and not from its description, name or title. See Guaranty Funding Corp. v.Bolling, 288 Ala. 319, 260 So.2d 589 (1972); Ex parte Jones,447 So.2d 709 (Ala. 1984)." Whitehead v. Hester, supra, at 1300. Under a common law pleading system, his cause of action would have been misrepresentation of a material fact upon which the plaintiff relied to his detriment. The misrepresentation may have been negligently (or recklessly, or innocently) made. Alabama Code 1975, § 6-5-101.
The trial judge understood that this narrow, factual question was presented, *Page 381 
and allowed only this issue to go to the jury. There was substantial evidence presented from which the jury could conclude that an employee of Cowley negligently misrepresented the condition of the steel tank to Brown, who acted upon this misrepresentation to his detriment.
Next, Cowley contends that Brown failed to prove by substantial evidence that the negligent representations made to Brown were made by a Cowley driver acting within the line and scope of his employment. We do not agree. This Court has said that "[i]t is elementary that the test of agency is the right of control, whether exercised or not, and that is a question for the trier of fact if the evidence is in dispute."Cordes v. Wooten, 476 So.2d 89 (Ala. 1985). The trial judge charged the jury as follows:
 "It is the contention of the plaintiff that the negligent acts were committed by an agent, servant or employee of the defendant corporation. This, of course is denied by the defendant, and thus placing again the burden of proof on the plaintiff of proving to your reasonable satisfaction from the evidence that the acts complained of were, in fact committed by an agent or an employee of the defendant. In that regard, I charge you that an agent is a person who by agreement with another called the principal acts for the principal and is subject to his control. Further, I charge you that when an agent is engaged to perform certain services whatever he does to that end or in furtherance of the employment is deemed to be an act done within the scope of the employment. I charge you that a principal is liable to others for the negligent acts or omissions of his agent or of his employee if such acts are proved to have been done within the scope of his employment and within the line of his duties." (R.T. 328-29.)
Whether one is the agent of another is ordinarily a question of fact to be decided by the jury. Daugherty v. M-Earth ofAlabama, Inc., 485 So.2d 1145 (Ala. 1986).
The trial court correctly permitted the jury to resolve the conflicts in the evidence. If there is substantial evidence presented, it is the function of the jury, as the finder of facts, to weigh conflicting evidence and inferences, and to determine the credibility of the witnesses. Nowell v. UniversalElec. Co., 792 F.2d 1310, 1312 (5th Cir. 1986), 20 Fed.R.Evid.Serv. 1306 (5th Cir. (Miss.) 1986). As this Court stated in Gleichert v. Stephens, 291 Ala. 347, 280 So.2d 776,777 (1973):
 "Proof in a negligence action is rarely absolute. Necessarily, a jury cannot depend on the basic facts alone; inferences must be drawn therefrom. A jury is like an artist who has been given various colors of paint. As the artist must mix and blend the colors and give them order to form a picture, so must a jury work with the facts they have been given to reach a verdict. Consequently, when the proof in a negligence suit reveals such a state of facts, whether controverted or not, from which different inferences and conclusions may reasonably be drawn, then the question of liability must be left to the jury. Shores v. Terry, 285 Ala. 417, 232 So.2d 657; Patterson v. Seibenhener, 273 Ala. 204, 137 So.2d 758."
Cowley's final argument is that Brown was, as a matter of law, contributorily negligent, and is thus barred from recovering. We have previously stated the law as to contributory negligence:
 "The law in Alabama is quite clear that while it is no defense to a claim based on wanton misconduct on the part of the defendant, contributory negligence is a complete defense to an action based on negligence. Creel v. Brown, 508 So.2d 684 (Ala. 1987). In order to prove contributory negligence, the defendant must show that the party charged 1) had knowledge of the condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing himself in the way of danger. Hatton v. Chem-Haulers, Inc., 393 So.2d 950 (Ala. 1980); Wallace v. Doege, 484 So.2d 404 (Ala. 1986)."
Rowden v. Tomlinson, 538 So.2d 15, 18 (Ala. 1988). Contributory negligence is an affirmative defense that the defendant bears the burden of proving. Rule 8(c), A.R.Civ.P. "In order to sustain a finding *Page 382 
of contributory negligence as a matter of law, there must be a finding that the plaintiff put himself in danger's way,Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276 (1928), and a finding that the plaintiff appreciated the danger confronted. [Citations omitted.] Moreover, it must be demonstrated that the plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident occurred. [Citations omitted.] Mere 'heedlessness' is insufficient to warrant a finding of contributory negligence as a matter of law. [Citations omitted.]" Central Alabama Elec. Co-op. v. Tapley,546 So.2d 371, 381 (Ala. 1989). The evidence presented does not require a finding of contributory negligence.
Our review of the record convinces us that there was substantial evidence presented to uphold this jury verdict. The trial court did not err in denying Cowley's motion for a directed verdict, its motion for a JNOV, and its motion for a new trial. A motion for a directed verdict and a motion for a JNOV should be denied if there is any conflict in the evidence for a jury to resolve. Black Belt Wood Co. v. Sessions, supra, at 1251.
The trial court must view the entire evidence, and all reasonable inferences that a jury might have drawn therefrom, in the light most favorable to the non-moving party. SeeCentral Alabama Elec. Co-op. v. Tapley, supra, at 378. The jury's verdict, if supported by the evidence, is presumed to be correct, and that presumption is strengthened by the trial court's denial of the motion for a new trial. Stokes v.Long-Lewis Ford, Inc., 549 So.2d 51, 52 (Ala. 1989); Merrell v.Joe Bullard Oldsmobile, Inc., 529 So.2d 943, 946 (Ala. 1988). The judgment of the trial court is due to be affirmed.
AFFIRMED.
MADDOX, JONES, ALMON and ADAMS, JJ., concur.
STEAGALL, J., concurs in the result.
[1] Brewer's testimony contradicts this. Brewer was asked, "Now do you recall Cowley ever bringing any tanks in, any underground tanks to be scrapped?" He replied, "Yes sir." (R.T. 34-35.)