ON APPLICATION FOR REHEARING
The opinion of March 22, 1991, is withdrawn and the following is substituted therefor:
This is a wrongful death/products liability case involving an 11-year-old boy, Keyeion A. Thornton. Keyeion was killed on Christmas Day 1987 when he lost control of his new Yamaha BW80S motorcycle and crashed into the window of a neighbor's house. The BW80S owner's manual described the vehicle as "intended for beginning riders."
William L. Thornton testified that he spent approximately 45 minutes Christmas morning going over the owner's manual with his son Keyeion and that they then took the motorcycle outside, where he demonstrated the controls to his son. He said that either he or his brother was supervising the child at all times. The child wore his helmet and successfully rode the vehicle for over an hour.
Around 10:00 a.m., Keyeion asked his father if he could ride the motorcycle to the end of the block. His father agreed, but instructed him to ride only to the end of the block and to be careful. Keyeion rode to the end of the block and turned around. A young child on a scooter rode out in front of Keyeion, creating an emergency. His father testified that the engine on the motorcycle sounded much louder than it had sounded at any time earlier that day. He screamed for his son to hit the brakes. Eyewitnesses testified that they saw Keyeion attempting to put on the brakes when the vehicle was going approximately 30 m.p.h. The father reached the neighbor's house at almost the same time Keyeion crashed into it. Keyeion was unconscious; he never regained consciousness and died the following day.
The father sued Yamaha Motor Corporation, Ltd., as the designer and manufacturer of the BW80S motorcycle, and Yamaha Motor Corporation, U.S.A., as the distributor.[1] (Those two defendants shall be referred to together as "Yamaha.") The father's complaint was based upon the Alabama Extended Manufacturer's Liability *Page 621 
Doctrine ("AEMLD") and on negligence and wantonness theories.[2]
Yamaha denied the material allegations of the complaint and pleaded the affirmative defenses of assumption of risk and contributory negligence. Yamaha later amended its answer to question the constitutionality of punitive damages awards under Alabama's Wrongful Death Statute.
The case proceeded to trial on April 16, 1990. Yamaha moved for a directed verdict at the close of the plaintiff's evidence. The trial court denied the motion. This motion was made again at the close of all the evidence. The trial court again denied the motion and submitted the case to the jury, which returned a verdict in favor of the plaintiff, awarding $750,000 in damages. The court entered a judgment on that verdict.
Yamaha timely filed motions for j.n.o.v. and for a new trial and/or a remittitur. These motions were overruled by the trial judge, who entered a written order on the post-judgment motions in accordance with this Court's opinions in Hammond v. City ofGadsden, 493 So.2d 1374 (Ala. 1986), and its progeny. Yamaha appeals.
We first consider Yamaha's contention that the plaintiff failed to introduce substantial evidence to prove his claim under the AEMLD. This Court established the elements of an AEMLD claim in Casrell v. Altec Industries, Inc.,335 So.2d 128, 132-33 (Ala. 1976), and Atkins v. American Motors Corp.,335 So.2d 134, 141 (Ala. 1976):
"To establish liability, a plaintiff must show:
 "(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 "(a) the seller is engaged in the business of selling such a product, and
 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 "(2) Showing these elements, the plaintiff has proved a prima facie case although
 "(a) the seller has exercised all possible care in the preparation and sale of his product, and
 "(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller."
Casrell, supra, at 132-33; Atkins, supra, at 141. The question whether a product is "unreasonably dangerous" is for the trier of fact, just as a question of negligence is. Casrell, supra, at 133.
Yamaha also contends that the plaintiff failed to produce substantial evidence on his negligence and wantonness claims. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
Thus, we look to the record in this case to determine what evidence was presented to the jury. The record reflects that Keyeion was killed while riding a Yamaha BW80S motorcycle. This motorcycle was designed, manufactured and distributed by Yamaha. A Yamaha representative admitted that it was designed to expand Yamaha's market to children as young as five *Page 622 
years old. William Thornton purchased the motorcycle from Hunter Cycle Company.
The owners's manual that accompanied the motorcycle depicts a power reduction plate. This part, actually a gasket and an attached plate, is normally inserted during the manufacture of the motorcycle into the exhaust port to reduce the power generated by the engine. When the plate is in place, the top speed of the motorcycle is 25 m.p.h. When it is not in place, the vehicle can obtain a speed of more than 40 m.p.h.
The motorcycle sold to William Thornton was shipped from Japan to Jacksonville, Florida, and then to Hunter Cycle. The motorcycles are shipped partially disassembled, two to a crate, to be assembled at the dealership. Yamaha's instructions to the dealer do not instruct the dealer to make any adjustment in the area where the power reduction plate is located. The service technician who assembled the motorcycle at Hunter Cycle testified that neither he nor any other employee removed the power reduction plate.
After the crash, the motorcycle was taken to the Thornton home and stored, undisturbed. William Thornton turned this cycle over to his attorneys, who delivered the cycle to John Sims, a mechanical engineer, in June 1988. Sims testified that he placed the motorcycle in his warehouse and that it remained there, undisturbed.
The trial court entered a protective order, at Yamaha's request, prohibiting any disassembly of the motorcycle unless representatives of all parties were present. The motorcycle was delivered by Thornton's attorneys to Scott Guthrie, a motorcycle accident reconstruction expert, in Tallahassee, Florida. A joint inspection of the motorcycle was held at Guthrie's laboratory. When the bike was disassembled, there was no power reduction plate in place.
Dr. Leslie Ball, a systems engineer, testified as an expert in product safety, human factors engineering, and safety management. He identified a design defect in the BW80S motorcycle that he defined as "emergency induced acceleration." He testified that the natural human reaction to an emergency on a motorcycle is to grip with the hands in a motion that turns the hands towards the body. Because of the design of the throttle of this motorcycle, the result of this natural reaction, he said, is to rotate the throttle to produce full acceleration. Dr. Ball testified that this motorcycle was unreasonably dangerous because there was no warning concerning the hazard produced by this design defect.
Dr. Ball testified that this hazard could have been designed out of the vehicle by using a thumb throttle. This type of throttle is used on all-terrain vehicles by several manufacturers and is not prohibited by any federal standard. Alternatively, Dr. Ball suggested an engine stop switch operated by the knee, or an adjustable speed governor.
A Yamaha employee testified as to how the power reduction plate is inserted during manufacturing procedures. He testified that if the procedures had been followed, any deficiency in the motorcycle would have been documented. He further testified that a completed motorcycle is operated as part of a final inspection.
Yamaha also presented expert testimony that the power reduction plate must have been removed after manufacture, because there were markings on the assembly where the power reduction plate is located, indicating that the plate had at one time been attached, and there were marks on the gasket indicating that an instrument had been inserted to remove the plate.
Thus, the issue of whether Yamaha had failed to install the power reduction plate during manufacture or whether the plate had been removed by someone after manufacture was an issue presented to the jury for resolution. The jury resolved this issue in favor of the plaintiff.
We hold that the plaintiff met his burden of proof under the AEMLD. Our review of the record reveals that the plaintiff produced substantial evidence from which the jury could infer that the motorcycle designed and manufactured by Yamaha and sold to William Thornton was sold in a defective condition, was unreasonably dangerous, and reached the user without *Page 623 
substantial change in the condition in which it was manufactured and sold.
We also hold that the plaintiff met the burden of proof required to sustain his claim of negligence. "The elements for recovery under a negligence theory are: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." Jones v. Newton,454 So.2d 1345, 1348 (Ala. 1984), citing Mascot Coal Co. v.Garrett, 156 Ala. 290, 47 So. 149 (1908). See also Rutley v.Country Skillet Poultry Co., 549 So.2d 82, 85 (Ala. 1989).
Yamaha argues that it produced evidence from which the jury could have concluded that the power reduction plate had been removed after manufacture. We agree, but there was also evidence from which the jury could conclude otherwise. Therefore, the question was one for the jury, and the jury found for the plaintiff. As we stated in Gleichert v. Stephens,291 Ala. 347, 280 So.2d 776, 777 (1973):
 "Proof in a negligence action is rarely absolute. Necessarily, a jury cannot depend on the basic facts alone; inferences must be drawn therefrom. A jury is like an artist who has been given various colors of paint. As the artist must mix and blend the colors and give them order to form a picture, so must a jury work with the facts they have been given to reach a verdict. Consequently, when the proof in a negligence suit reveals such a state of facts, whether controverted or not, from which different inferences and conclusions may reasonably be drawn, then the question of liability must be left to the jury. Shores v. Terry, 285 Ala. 417, 232 So.2d 657; Patterson v. Seibenhener, 273 Ala. 204, 137 So.2d 758."
We next look at Yamaha's contention that the plaintiff did not present sufficient evidence to submit the issue of Yamaha's wantonness to the jury. We have said that wantonness is not merely a higher degree of culpability than negligence.Chance v. Dallas County, 456 So.2d 295, 298 (Ala. 1984), citingGraves v. Wildsmith, 278 Ala. 228, 177 So.2d 448 (1965). We further elaborated in Central Alabama Electric Cooperative v.Tapley, 546 So.2d 371 (Ala. 1989):
 "What constitutes wanton misconduct depends upon the facts presented in each particular case. Brown v. Turner, 497 So.2d 1119 (Ala. 1986); Trahan v. Cook, 288 Ala. 704, 265 So.2d 125 (1972); Westbrook v. Gibbs, 285 Ala. 223, 231 So.2d 97
(1970). In Lynn Strickland Sales Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142
(Ala. 1987), the majority of this Court made it perfectly clear that wantonness, which requires some degree of conscious culpability, is not to be confused with negligence (i.e., mere inadvertence):
 " 'Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . .' "
546 So.2d at 379. (Emphasis in original.)
The plaintiff produced substantial evidence to support a claim of wantonness. The trial judge recited in hisHammond order the evidence presented by the plaintiff:
 "4. . . . In denying Defendants' Motion for Directed Verdict this Court held that there was substantial evidence of wanton conduct. If the testimony of Plaintiff's expert, Dr. Leslie Ball, is believed (as apparently it was by this jury) Defendants' conduct was extremely culpable. Applying the principles of system safety engineering, Dr. Ball identified a hazard in the vehicle which he defined as 'emergency induced acceleration.' Dr. Ball described several feasible engineering alternatives to design out or guard against that hazard. Dr. Ball further testified that system safety engineering principles were regularly applied by reasonable manufacturers in virtually every industry.
 "Defendants admitted that they never performed any system safety engineering *Page 624 
on this product, although it was a motorized vehicle designed to be used by children as young as five years old. Consequently, Defendants did not identify the hazard of emergency induced acceleration and took no action to eliminate it from the design or to protect against it.
 "The results of all testing performed on the vehicle were introduced as evidence at trial. There is absolutely no indication of any system safety engineering being done by these Defendants. In addition, although this vehicle was intended to be used by young beginner riders, the test reports contained no evidence that the vehicle was ever ridden by children during the design or testing phase."
(C.R. 1024.)
Yamaha also contends that the trial court erred in recharging the jury as to wantonness. After the jury retired, it sent this question to the trial judge: "How does contributory negligence on the part of Mr. Thornton relate to the products liability and negligence?" (R. 1473.) Having heard from counsel for both sides, the trial judge recharged the jury. As a portion of that charge, he referred to the wantonness claim. Yamaha took exception to the instruction on the grounds that the jury did not request any instructions on wantonness. However, a review of the trial judge's charge reflects that his charge was responsive and was not in error. In order to respond to the question concerning contributory negligence, it was necessary for the trial judge to state that contributory negligence is no defense to wantonness.
Yamaha next claims that the trial court erred in failing to direct a verdict in favor of the defendants based upon the doctrines of contributory negligence and assumption of risk. Yamaha contends that William Thornton was guilty of contributory negligence or assumption of risk as a matter of law because he allowed his son to ride the motorcycle in the street and because, Yamaha contends, he failed to supervise his child in the activity leading to the accident. "In order to prove contributory negligence, the defendant must show that the party charged 1) had knowledge of the condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing himself in the way of danger. Hatton v. Chem-Haulers, Inc.,393 So.2d 950 (Ala. 1980); Wallace v. Doege, 484 So.2d 404 (Ala. 1986)."Rowden v. Tomlinson, 538 So.2d 15, 18 (Ala. 1988). Contributory negligence is an affirmative defense that the defendant bears the burden of proving. Rule 8(c), A.R.Civ.P. As this Court said in Central Alabama Elec. Co-op. v. Tapley, supra:
 "In order to sustain a finding of contributory negligence as a matter of law, there must be a finding that the plaintiff put himself in danger's way, Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276 (1928), and a finding that the plaintiff appreciated the danger confronted. Wilson v. Alabama Power Co., 495 So.2d 48 (Ala. 1986); Marquis v. Marquis, 480 So.2d 1213 (Ala. 1985); Baptist Medical Center v. Byars, 289 Ala. 713, 271 So.2d 847 (1972); Mackintosh Co. v. Wells, supra. Moreover, it must be demonstrated that the plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident occurred. Marquis v. Marquis, supra; Elba Wood Products, Inc. v. Brackin, 356 So.2d 119
(Ala. 1978). Mere 'heedlessness' is insufficient to warrant a finding of contributory negligence as a matter of law. Decatur Light, Power Fuel Co. v. Newsom, 179 Ala. 127, 59 So. 615 (1912)."
546 So.2d 371, 381.
The record reflects that William Thornton testified that he bought the motorcycle that Hunter Cycle's salesman had recommended for his child. Although Yamaha contends that the motorcycle was strictly for off-road use, the salesman demonstrated the motorcycle to Thornton by riding it on pavement. Thornton testified that he spent 45 minutes going over the owner's manual with his son, demonstrated the motorcycle for him, and had his son operate the vehicle in the yard of their home. The child operated the vehicle for over an hour *Page 625 
prior to the time of the accident. There was evidence that at all times the child was being supervised by an adult, either Thornton or his brother. There was substantial evidence to contradict Yamaha's defense of contributory negligence and thus to warrant resolution of this issue by the jury.
We next consider whether the trial court erred in allowing William Thornton to testify regarding a conversation with the salesman of Hunter Cycle about the suitability of the motorcycle for his son. Yamaha contends that this evidence was inadmissible hearsay. The plaintiff contends that this conversation was brought into issue by Yamaha's claim of contributory negligence and assumption of the risk and was admissible for a purpose other than to prove the truth of the matter asserted. See C. Gamble, McElroy's Alabama Evidence, § 242.01(1) (3d ed. 1977). "A statement made out of court is not hearsay if it is given in evidence for the purpose merely of proving that the statement was made, provided that purpose be otherwise relevant in the case at trial. 5 Wigmore, Evidence, § 1361; 6, Ibid., § 1770; Motors Ins. Corp. v. Lopez,217 Ark. 203, 229 S.W.2d 228 (1950)." Bryant v. Moss, 295 Ala. 339, 342,329 So.2d 538, 541 (1976). By claiming that William Thornton was contributorily negligent, Yamaha brought into issue the question whether he had knowledge of the danger and an appreciation of the danger under the circumstances, and whether he failed to exercise reasonable care in light of his knowledge and appreciation of that danger. Therefore, his conversation with the salesman was relevant and was offered for a purpose other than proving the truth of the statements made.
Yamaha's final contention is that the imposition of punitive damages violates the due process provisions of theFourteenth Amendment and of the Alabama Constitution. As previously stated, the trial judge gave a post-judgment review in accordance with Hammond v. City of Gadsden, supra. The United States Supreme Court has upheld this Court's decision inPacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala. 1989), which rejected a similar Fourteenth Amendment challenge to punitive damages awards. Accordingly, this judgment is due to be affirmed as to this issue, on the authority of Pacific Mut.Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032,113 L.Ed.2d 1 (1991).
For the reasons stated above, the judgment in this case is due to be affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
HORNSBY, C.J., and MADDOX and KENNEDY, JJ., concur.
HOUSTON, J., concurs specially.
[1] The plaintiff also sued Helmtec Industries, Inc., and Helmtec U.S.A., under the Alabama Extended Manufacturer's Liability Doctrine, as manufacturer and distributor, respectively, of the helmet worn by Keyeion on the date of the accident. These suits were settled for $100,000. The plaintiff also sued Hunter Cycle Company, Inc., the seller of the motorcycle. This defendant paid $150,000 in a pro tanto settlement.
[2] The plaintiff alleged that the Yamaha BW80S motorcycle was in the same mechanical and design condition as it was on the date of the manufacture and sale, and that the motorcycle was being used by Keyeion as it was intended by Yamaha to be used. The plaintiff also alleged that the motorcycle was in a defective condition and was unreasonably dangerous to Keyeion, alleging that it was designed, manufactured, and sold or distributed in a defective condition that subjected the child to an unreasonable risk of harm. The complaint further alleged that the motorcycle was unreasonably dangerous in its design and manufacture and was accompanied by inadequate warnings and instructions. The plaintiff's claims of negligence and wantonness arose from these alleged deficiencies and from Yamaha's alleged failure to apply safety engineering principles to identify and eliminate hazards associated with the use of the motorcycle and to test the suitability of the motorcycle for young, inexperienced riders.