WRIGHT, Retired Appellate Judge.
Merrill I. Hanks and Grace Hanks (the policyholders) appeal a judgment as a matter of law and a summary judgment entered in favor of Alfa Mutual Insurance Company. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
The policyholders sued Alfa in the Es-cambia County Circuit Court, asserting claims of bad faith, breach of contract, negligence and/or wantonness, and fraudulent suppression. Alfa answered and subsequently filed a motion for a summary judgment. The policyholders filed an op *1162 position to the summary judgment motion, along with supporting documents. Shortly before trial, Alfa filed a second summary judgment motion, along with a narrative statement of the undisputed facts and the deposition testimony of Mr. Hanks and three witnesses. Following a hearing, the trial court granted Alfa’s summary-judgment motion on the policyholders’ bad faith claim only.
The case proceeded to trial before a jury. At the close of the policyholders’ evidence, Alfa moved for a judgment as a matter of law. Following arguments of counsel, the trial court granted Alfa’s motion and entered a judgment accordingly.
On appeal, the policyholders contend that the trial court erred in entering a judgment as a matter of law in favor of Alfa and in entering a summary judgment in favor of Alfa on the bad faith claim.
A motion for a judgment as a matter of law (formerly a directed verdict) tests the sufficiency of the evidence. Flagstar Enter., Inc. v. Bludsworth, 696 So.2d 292 (Ala.Civ.App.1996). A judgment as a matter of law is proper where (1) the non-moving party has failed to present substantial evidence of some element essential to his claim or (2) there is no disputed issue of fact upon which reasonable persons could differ. Rule 50(a), Ala. R. Civ. P.; Driver v. Nat’l Security Fire & Cas. Co., 658 So.2d 390 (Ala.1995); John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375 (Ala.1990).
When he considers a motion for a judgment as a matter of law, the trial judge must let a question go to the jury if there is substantial evidence to support the theory of the complaint. Flagstar Enter., Inc., supra. Additionally, in reviewing the ruling on a motion for a judgment as a matter of law, this court must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable evidentiary inferences as the jury would have been free to draw. Wads-worth v. Yancey Bros. Co., 423 So.2d 1343 (Ala.1982).
To establish negligence, a plaintiff must prove that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach proximately caused the plaintiff to be injured or damaged. Martin v. Arnold, 643 So.2d 564 (Ala.1994). “To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty ... that ... proximately cause[d] the injury of which the plaintiff complains.” Martin, 643 So.2d at 567. In order to establish fraudulent suppression, a plaintiff must establish:
“ ‘(1) that the defendant had a duty to disclose a material fact; (2) that the defendant either failed to disclose or concealed that material fact; (3) that the defendant’s failure to disclose or his concealment of that material fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered damage as a result of his action, or inaction, induced by the defendant’s failure to disclose or his concealment of the material fact.’ ”
Blackburn v. Fidelity & Deposit Co. of Maryland, 667 So.2d 661, 673 (Ala.1995) (quoting Soniat v. Johnson-Rast & Hays, 626 So.2d 1256, 1258-59 (Ala.1993)). To prove a bad faith claim against an insurer, a plaintiff must go beyond merely showing nonpayment. Nat’l Security Fire & Cas. Co. v. Bowen, 417 So.2d 179 (Ala.1982). The plaintiff must show that the insurance company had no legal or factual defense to the insurance claim. Bowen. Further, “if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.” Nat’l Savings Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala.1982).
The record reveals the following pertinent facts: In 1976, the policyholders pur *1163 chased a homeowner’s insurance policy from Alfa’s predecessor. At that time, the policyholders’ insurance agent, Jerry Dyess, knew that the policyholders owned some sterling silver flatware. In approximately 1983, Mr. Hanks asked Dyess about the availability of a “Replacement Cost” personal property endorsement. On February 1, 1984, Dyess sent Mr. Hanks a copy of the information regarding a replacement cost endorsement and told Mr. Hanks to review the information and to call him if he had any questions. On approximately January 10, 1985, Mr. Hanks notified Dyess that he wished to purchase the “Replacement Cost” personal property endorsement. The endorsement provided that Alfa’s limit of liability for loss under the endorsement “shall not exceed the smallest of the following amounts:
“a. Replacement cost at the time of the loss;
“b. The full cost of repair;
“c. 400% of the actual cash value at the time of loss; or
“d. Any special limit of liability described in the policy.”
The policyholders’ homeowner’s insurance policy contained special limits of liability regarding losses by theft of jewelry, a limit of $1,000, and of silverware, a limit of $2,500. Dyess did not review or explain the endorsement to the policyholders, nor did Dyess tell the policyholders about the availability of an endorsement that would cover jewelry and silverware, exceeding $1,000 and $2,500 limitations.
In 1994, the policyholders’ home was burglarized, and the thief, or thieves, removed jewelry worth $35,610 and sterling silver flatware worth $22,760. The policyholders reported the burglary to the police; however, none of their jewelry or silverware has been recovered. The policyholders also notified their Alfa agent of the loss and made a timely claim under the policy. Following an investigation of the claim and a review of the policyholders’ policy, Alfa tendered a check in the amount of $3,500 to the policyholders. The policyholders rejected the check and notified Alfa that they felt they were entitled to more than $3,500. Alfa obtained statements from Dyess, from the claims adjuster, and from Mrs. Hanks and again determined that the policyholders were entitled to only $3,500. The policy limitations and language in question remained unchanged from 1985 through 1994.
Mr. Hanks testified that he reviewed the endorsement and considered the endorsement for 11 months before he decided to purchase it. He also stated that he reviewed his insurance policy. Mr. Hanks further stated that he did not have any conversations with any employees or agents of Alfa about coverage between 1985 and 1990, when he lowered his coverage. He testified that he did not have conversations about coverage between 1990 and 1993. At trial, Mr. Hanks testified that if he had been aware that he could have obtained higher limit insurance coverage of his wife’s jewelry and their silverware, he might have considered buying that endorsement.
The existence of a duty to disclose is a question of law to be determined by the trial judge, unless “special circumstances” exist. State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834 (Ala.1998). The policyholders contend that the fraudulent suppression occurred at the time of sale, when Dyess failed to disclose that there was an endorsement without the $1,000 limitation on jewelry and the $2,500 on silverware. At the time of sale, the only communication between Alfa and the policyholders was Dyess’s letter transmitting the endorsement to Mr. Hanks, requesting him to read the endorsement and to call if he had any questions. Between 1985 and 1993 there was no communication between the policyholders and Alfa regarding the endorsement. In evaluating the question of whether Alfa had a duty to speak, we must consider (1) the relationship between the parties; (2) the relative knowledge of the parties; (3) the value of particular fact; (4) the policyholders’ opportunity to ascertain the fact; (5) the customs of the trade; and (6) other rele *1164 vant circumstances. Owen, supra. In this case the plain language of the endorsement stated that Alfa’s limit for liability for loss under the endorsement was subject to “[a]ny special limit of liability described in the policy.” The policyholders’ policy contained special limits of liability regarding losses by theft of jewelry and silverware. Mr. Hanks testified that he read the endorsement and the policy; therefore, considering the clear language of the endorsement and the policy, we conclude that Alfa should not be held responsible for Mr. Hanks’s confusion regarding losses of jewelry and silverware by theft. See Owen, supra. Accordingly, we conclude that Alfa owed the policyholders no duty of disclosure and that, therefore, the policyholders failed to prove a basic element of negligence, wantonness, and fraudulent suppression. We need not address the remaining elements of the policyholders’ claims.
With regard to the policyholders’ claim of bad faith, Alfa tendered the policy limits of $3,500, which the policyholders rejected. They insisted that they were entitled to the full replacement cost of the jewelry and silverware stolen from their home. In this case, it is clear that Alfa had a legitimate reason to deny the policyholders’ request for the replacement cost of the jewelry and silverware that were stolen. Consequently, we conclude that the trial court properly entered a summary judgment on the policyholders’ bad faith claim in favor of Alfa. Dutton, supra.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12 — 18—10(e), AIa.Code 1975.
AFFIRMED.
All the judges concur.